UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DENZIL E. MCKATHAN, | **)** |
| | **)** |
| *Plaintiff,* | **)** |
| | **)** |
| v. | **)** |
| | **)**   Civil Action No. 22-1865 (DLF) |
| UNITED STATES DEPARTMENT OF | **)** |
| HOMELAND SECURITY, *et al.,* | **)** |
| | **)** |
| *Defendants.* | **)** |
| | **)** |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE (ECF No. 25)**

Pursuant to the Court's June 30, 2023 Order, Defendants, the United States Department of

Homeland Security ("DHS"), the United States Department of State ("State Department"), the

Executive Office for United States Attorneys ("EOUSA"), the United States Department of Justice

("Justice Department"), and the Administrative Office of United States Courts ("Administrative

Office") (collectively "Defendants"), by and through undersigned counsel, respectfully submit this

Reply to Plaintiff's Response (ECF No. 25)

**I.     U.S. Department of State**

On March 9, 2022, Plaintiff submitted a FOIA request for "[a]ny and all records of any

kind . . . located in any location, that mentions any of the following:  a. an individual Denzil

McKathan (or McCathan)[;] b. the address '14570 Cat Deakle'[;] c. the phone number '251-259-

6324'" for the time period of January 1, 2012 to October 1, 2014.  On March 24, 2022, State denied

the request "because it does not reasonably describe the records sought." *See* Ex. F to

Compl.  Plaintiff appealed the denial on April 11, 2022 (*see* Ex. G to Compl.) and State affirmed

the denial on April 20, 2022 (*see* Ex. H to Compl.).  After Plaintiff commenced litigation, State

moved to dismiss Plaintiff's complaint on November 18, 2022 (*see* Dkt. No. 15) and supported its motion with the Declaration of Susan Weetman.  State moved to dismiss because as worded, Plaintiff's request would suggest that State should conduct "a search of every document in possession of the State Department over a 33-month period for three key words or phrases." *Id.*  As explained in Ms. Weetman's declaration, and as noted in Plaintiff's last filing, this would be a "monumental undertaking."

Contrary to Plaintiff's claim, State was not lying when it moved to dismiss Plaintiff's complaint and is not lying now.  As explained in Ms. Weetman's declaration, conducting a search of "every bureau, office, and overseas post of the Department . . . for records" (Weetman Decl. at ¶ 14), would indeed be a "monumental undertaking."  That remains true, but that is not the search that State undertook and State never stated that was the search it performed.

Once State's motion to dismiss was denied on March 8, 2023, State was given no choice but to determine how to conduct a reasonable search for records responsive to Plaintiff's request.  Because Plaintiff never provided any additional details to suggest where in the Department the records he requested might reside, State could not conduct searches of any specific bureaus, offices, or overseas posts.  Rather, than conducting the "monumental undertaking" contemplated by Plaintiff's request, State determined that given the limited information provided by Plaintiff, a reasonable search would be a search of State's (i) electronic records database, known as the eRecords Archive; and (ii) Retired Records Inventory Management System ("RIMS").

The eRecords Archive is the Department's central repository for storing permanent electronic records transferred to the Bureau of Administration such as correspondence, diplomatic notes, cables, all emails sent and received on the state.gov network since January 1, 2017, and pre-2017 digital retired records transferred to the Bureau of Administration.  RIMS is a searchable

database, containing retired files manifests, that automates the processing of records retired to the Records Service Center and tracks the status of all materials received at the Records Service Center ("RSC") from the point of receipt to ultimate disposition. State searched both systems using the terms provided by Plaintiff, which yielded no results. Had these searches returned any responsive records, then State would have considered conducting additional searches of specific offices as suggested by those records. But, without any additional information suggesting where State should search, State concluded that it had conducted a reasonable search.

Courts in this circuit have held that "[a]n agency fulfills its obligations under FOIA if . . . its search was reasonably calculated to uncover all relevant documents." *Clarke v. Dep't of Just.*, No. CV 18-02192 (ACR), 2023 WL 2536264, at *3 (D.D.C. Mar. 13, 2023) (cleaned up); *Neese v. United States Dep't of Just.*, No. 1:19-CV-01098 (CJN), 2022 WL 898827, at *3 (D.D.C. Mar. 28, 2022) (an agency must show a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.") (internal quotations and citations omitted). And, courts have held that where a plaintiff "never identified particular locations that the agency should look, [the defendant agency] acted reasonably in deciding to confine its inquiry to [its] central filing system." *Neese*, 2022 WL 898827, at *3; *see also Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) ("When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return"). Accordingly, given the circumstances of this case and the limited information provided by Plaintiff, State performed a reasonable search for responsive records. When no records were identified, State sent Plaintiff a letter dated April 17, 2023, confirming that it had not identified any responsive records. If necessary, State is prepared to file

3

a declaration attesting to the details of its searches and supporting the adequacy thereof.  Because there is no conflict between Ms. Weetman's declaration in support of State's motion to dismiss and the explanation of the searches that State has since conducted, no discovery should be granted at this time.

## II.    Department of Homeland Security

The Plaintiff did not include a reference number in his original complaint. DHS attempted as best as possible to ascertain the request to which Plaintiff was referring; however, despite including multiple reference numbers at this juncture, the FOIA request language at issue remains substantively the same and DHS's position remains the same. The Plaintiff will need to perfect his request in order for DHS to be able to conduct a search. In Plaintiff's response, Plaintiff did not provide the additional information needed to perfect his request which would allow DHS to conduct a search, namely: the component he believes created and/or controls the records, the event that he believes warranted the creation of the record, and the time period that he believes the records or files were created and compiled. There does not exist, for example, a searchable agency-wide database at DHS and therefore more information is necessary to properly direct the request to the right location and be able to conduct a search.

DHS has already invited the Plaintiff to clarify the request with the additional information requested. Given the Plaintiff is unable to perfect the request, DHS will move to dismiss based on failure to reasonably describe the records sought.

## III.    Administrative Office of U.S. Courts

Given that Plaintiff has confirmed that he is not seeking records from the Administrative Office under the Freedom of Information Act (ECF No. 11), any request for records must go through the federal judiciary's disclosure regulations (ECF No. 24).  The Administrative Office's

answer attempted to be helpful to Plaintiff by explaining that its regulations "are equivalent to the executive branch's Touhy regulation." (ECF No. 24, ¶ 9).  "The Supreme Court has recognized that agency heads may promulgate regulations withdrawing from employees the power to produce documents."  *Houston Bus. Journal v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (citing U*nited States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–69 (1951))." *Stauffer v. Miller*, 2014 WL 12539886, at \*4 (D.D.C. July 16, 2014).  The federal judiciary's regulations were promulgated under the authority granted the Director of the Administrative Office, under the supervision and direction of the Judicial Conference of the United States (28 U.S.C. § 604), and were adopted by the Judicial Conference in March 2003. *See Guide to Judiciary Policy*, vol. 20, ch. 8, § 810.20. Plaintiff maintains that *Touhy* does not apply because his request for documents is not through any subpoena but rather it is made under the First Amendment and Common Law Right of Access. Regardless of how Plaintiff wishes to characterize his request for records, before his request can be considered, he must follow the agency's established disclosure regulations.  Because Plaintiff has not shown that he has even attempted to comply with the disclosure regulations, the Administrative Office does not have before it a proper request from Plaintiff to consider.

IV.    **Executive Office of United States Attorneys (EOUSA)**

Plaintiff's Response claims that EOUSA is non-compliant because the agency allegedly did not tell Plaintiff what it intends to produce or what it intends to withhold. Plaintiff's argument ignored the fact that EOUSA sent its first interim response to Plaintiff on June 2, 2023.  The records in that production should inform Plaintiff what documents were produced.  To the extent that the production contains redactions, there are specific FOIA exemptions imprinted on the redacted portions of the records, which should inform Plaintiff of the exemptions invoked.  Furthermore, as

the Status Report states, EOUSA provided a second production on July 7, 2023, and will process

250 pages per month to provide additional interim productions once a month.  ECF No. 24, ¶ 7.

Dated: July 12, 2023                         Respectfully submitted,

                                             MATTHEW M. GRAVES
                                             D.C. Bar. #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Chief, Civil Division


                                    By:      _____//s//_____
                                             JOHN C. TRUONG
                                             D.C. BAR #465901
                                             Assistant United States Attorney
                                             601 D Street, N.W.
                                             Washington, D.C. 20530
                                             Tel: (202) 252-2524
                                             Fax: (202) 252-2599
                                             E-mail: John.Truong@usdoj.gov
                                             Counsel for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July, 2023, I caused the foregoing Defendant's

Reply to Plaintiff's Response (ECF No. 25) to be served on Plaintiff *via* First Class Mail, postage

pre-paid, at the following address:

DENZIL E. MCKATHAN
FED. REG. NO. 09015-003
FCI YAZOO CITY LOW
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 5000
YAZOO CITY, MS  39194


*/s/ John C. Truong*
JOHN C. TRUONG
Assistant United States Attorney