UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENZIL E. MCKATHAN,

              Plaintiff,

      v.

DEPARTMENT OF HOMELAND
SECURITY, *et al*.,

           Defendants.

                           Civil Action No. 22-1865 (DLF)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND
<u>FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION</u>**

TABLE OF CONTENTS

I.    Underlying Criminal Proceedings ................................................................ 4

II.   Plaintiff's FOIA and Other Requests for Information .................................. 5

  A.   The Administrative Office ...................................................................... 5

  B.   The State Department ............................................................................. 6

  C.   DHS........................................................................................................ 7

  D.   The Criminal Division ........................................................................... 9

  E.   EOUSA ................................................................................................ 10

III.  PROCEDURAL HISTORY ...................................................................... 11

I.    Plaintiff's Claims Against the Administrative Office Should be Dismissed........................ 15

  A.   FOIA Does Not Apply to the Administrative Office............................ 15

  B.   There Exists No Common Law Right of Access .................................. 17

  C.   There is No First Amendment Right Of Access .................................. 20

II.   Plaintiff's Common Law and First Amendment Claims Should Be Dismissed Against All
Defendants ...................................................................................................... 21

III.  Plaintiff's FOIA Claim Against DHS Should Be Dismissed ........................... 22

  A.   Legal Standards.................................................................................... 22

  B.   Plaintiff Did Not Submit a Valid FOIA Request ................................ 24

  1.   Name, Address, Phone Number, or Case ID Number ......................... 25

  2.   Overly Broad Time Frame ................................................................... 26

  3.   Overly Broad or Vague Subject Matter ............................................... 27

  C.   Failure to Comply with Regulations or to Exhaust............................. 28

IV.   The State Department Conducted an Adequate Search .................................... 29

V.    Plaintiff's Requests for Discovery, a *Vaughn* Index, and Expedited Summary Judgment
Briefing Schedule Should Be Denied ........................................................... 32

  A.   Request For Limited Discovery Should Be Denied.............................. 32

  B.   A *Vaughn* Index At This Time Is Premature ...................................... 33

  C.   An Expedited Summary Judgment Briefing Schedule Should Be Denied As Premature . 35

Defendants the Homeland Security ("DHS"), Department of State ("State Department"), Executive Office of United States Attorneys ("EOUSA"), Administrative Office of U.S. Courts ("Administrative Office"), and the Criminal Division of the Department of Justice ("Criminal Division"), by and through undersigned counsel, respectfully submit this memorandum of points and authorities in support of Defendants' partial motion to dismiss and for summary judgment under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, and combined response to Plaintiff's motion for limited discovery, a *Vaughn* index, and/or an expedited summary judgment briefing schedule.

Plaintiff has failed to show the existence of subject-matter jurisdiction or a cause of action against the Administrative Office, which should be dismissed from the case. Plaintiff also cannot show the existence of subject-matter jurisdiction or a cause of action for his claims under the common law right of access or the First Amendment against the remaining agency defendants, either, and the Court should dismiss these claims.

Plaintiff failed to reasonably describe the records he sought in his requests to DHS and he has therefore failed to state a FOIA claim. He also failed to follow FOIA regulations when making his request to DHS and fails to state a FOIA claim for this reason, as well. DHS therefore likewise should be dismissed from the action.

The undisputed facts show that the State Department conducted an adequate search and should be granted summary judgment and dismissed from the case, too.

Finally, Plaintiff's request for limited discovery is not warranted by the facts or the law; that Plaintiff's request for a *Vaughn* index is premature until the completion of EOUSA's document productions; and that an expedited summary judgment briefing schedule for the remaining issues should not be set until after the resolution of the instant motion and the

completion of EOUSA's document productions.

## BACKGROUND

On March 9, 2022, Plaintiff Denzil McKathan submitted a series of requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the common law right of access, and the First Amendment to the Administrative Office, DHS, Criminal Division, State Department and EOUSA. Plaintiff's requests arise in the context of his previous criminal convictions and a currently ongoing appeal collateral to those matters.

## I.    Underlying Criminal Proceedings

Plaintiff Denzil McKathan was initially convicted in 2005 for possession of child pornography in violation of 18 U.S.C. § 2252A(a) in *United States v. McKathan*, No. 5-cr-94 (S.D. Ala. 2005) ("*McKathan I*"). After a term of imprisonment, McKathan was placed on supervised release. *See McKathan v. United States*, 969 F.3d 1213, 1218 (11th Cir. 2020) ("*McKathan IV*"). In September 2014, McKathan's probation officer discovered that McKathan possessed a smartphone capable of accessing the internet and, after further investigation, found downloaded images of child pornography on it, in violation of the terms of his supervised release. *Id*. The district court revoked McKathan's supervised release. *Id.* at 1219.

Subsequently, McKathan was charged with three counts of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of knowingly possessing material containing an image of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *Id*.; *see also United States v. McKathan*, No. 14-cr-290 (S.D. Ala. 2014) ("*McKathan II*"). McKathan pled guilty to a single count of knowingly receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and was sentenced to a term of 188 months in prison. *Id*. at 1220.

In November 2015, McKathan filed a *pro se* petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction in *McKathan II*. The U.S. District Court for the Southern District

of Alabama initially rejected the motion, but issued him a certificate of appealability.  *McKathan v. United States*, No. 15-cv-611 (S.D. Ala. 2015) ("*McKathan III*").  The U.S. Court of Appeals for the Eleventh Circuit vacated the district court's initial denial of the motion.  *McKathan IV*, 969 F.3d at 1223.  On remand, the district court denied McKathan's 28 U.S.C. § 2255 petition, for which the Eleventh Circuit then declined to issue a certificate of appealability.  *McKathan v. United States*, 2021 WL 8053512 (11th Cir. Nov. 30, 2021) ("*McKathan VI*").

On January 14, 2022, McKathan filed a motion under Rule 60(b) seeking relief from the judgment denying his § 2255 petition.  *McKathan III*, Mot. for Relief, ECF No. 163 (S.D. Ala. Jan. 14, 2022).  The district court denied the Rule 60(b) motion on November 16, 2022.  *McKathan III*, ECF No. 169 (S.D. Ala. Nov. 16, 2022).

Since then, McKathan has filed another appeal with the Eleventh Circuit to challenge the denial of the Rule 60(b) motion.  That appeal remains pending.  *McKathan v. U.S.*, No. 22-14002 (11th Cir. 2023) ("*McKathan VII*").[1]

## II.   Plaintiff's FOIA and Other Requests for Information

On March 9, 2022, during the pendency of his Rule 60(b) motion, Plaintiff submitted the following requests for information to Defendants under the Freedom of Information Act (except as to the Administrative Office), the First Amendment, and the common law right of access.

### A.   The Administrative Office

Plaintiff sent a letter to the Administrative Office of U.S. Courts requesting the following

---

[1]     Although not dispositive, to the extent that this case reveals that Plaintiff may be seeking information to use in his collateral challenges to his criminal convictions, care should be taken to ensure that Plaintiff cannot make an "end run" around the appeals process by imposing obligations on unrelated entities and proceedings under the common law or First Amendment claims.  *See generally United States v. Ring*, 47 F. Supp. 3d 38, 42 (D.D.C. 2014) ("A First Amendment right of access does not attach to criminal discovery materials not admitted into evidence, since these documents are not a 'traditionally public source of information.'") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

"pursuant to the First Amendment to the U.S. Constitution (including without limitation, the right to free speech, right to associate, right to petition, right to recieve [sic] information) and the common law right of access to judicial record," but not under FOIA, from January 1, 2007 to January 1, 2022:

> 1. The entire case file of Denzil McKathan, an individual.

> 2. Any and all communications, or series of communications between Raphael Goodwin Jr. and any officer of the United States Court for the Southern District of Alabama that mentions or is related to the supervision of Denzil McKathan

> 3. Any KRONOS or PACS data created by Raphael Goodwin Jr. that mentions or is relate [sic] to the supervision of Denzil McKathan

> 4. the unmasking of any U.S. person using the website imgsrc.ru

Compl. Ex. K, ECF No. 1.

Administrative Office received the letter but did not respond.  Am. Answer ¶ 30, ECF No. 21.

## B.    The State Department

Plaintiff submitted a request to the State Department seeking, from January 1, 2012 to October 1 2014:

> 1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication or series of communications) located in any location, that mentions any of the following:

> a. an individual Denzil McKathan (or McCathan)

> b. the address "14570 Cat Deakle"

> c. the phone number "251-259-6324"

Compl. Ex. E.

On March 24, 2022, the State Department acknowledged receipt of Plaintiff's request and informed him it was denying the request as written because it did not "reasonably describe" the

records sought.  Weetman Decl. ¶ 6, enclosed herewith as Ex. 1 ("Mot. Ex. 1"); *see also* Compl. Ex. F.  In the letter, the State Department informed Plaintiff he may include details such as the "subject, timeframe, names of any individuals involved, a contract number (if applicable), and reasons why the requester believes the Department may have records regarding the subject of the request." *Id.*

Plaintiff appealed the denial of his request without clarifying his request, *see* Compl. Ex. G, and on April 20, 2022, an appeals officer affirmed the conclusion that Plaintiff did not reasonably describe the records sought.  Weetman Decl. ¶ 8; *see also* Compl. Ex. H.  At no time did Plaintiff amend his initial FOIA request or otherwise provide additional information to the State Department to help clarify his request.  Weetman Decl. ¶ 9.

After the Court's March 8, 2023 Minute Order denying the State Department's first motion to dismiss, the State Department, still proceeding without the benefit of any clarification from Plaintiff, considered how best to conduct an adequate search.  *Id.* ¶ 12.  Because Plaintiff did not submit any information that would lead to the inference that any specific bureau, office, or overseas post would contain responsive records, the State Department concluded that it would be reasonable to search its electronic records database (the eRecords Archive) and its searchable index of retired records (the Retired Records Inventory Management System).  *Id.* ¶¶ 13-16.  The State Department then conducted a search using the terms provided by Plaintiff, which revealed no results.  *Id.* ¶ 17. The State Department informed Plaintiff of this fact by letter dated April 17, 2023.  June 1, 2023 Status Report Ex. 1, ECF No. 24.

## C.    DHS

DHS received a request seeking, from January 1, 2012 to March 1, 2022:

1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication) located in any location that menitons [sic] any of the

following:

a. the individual Denzil McKathan (or McCathan)

b. the address "14570 Cat Deakle"

c. the phone number "251-259-6324"

d. the investigation case number listed in section 3 on the custody receipt for seized property and evidence included with this request

e. obtaining subscriber information associated with any IP address of U.S. based users of the website imgsrc.ru

f. the unmasking of any U.S. based user of imgsrc.ru

Compl. Ex. B.  DHS ultimately assigned three different tracking numbers to this single request: 2022-OBFO-33539, 2022-HQFO-01083, and 2022-HQFO-01264.  Pl's Resp. to Status Report at 4, ECF No. 25 (June 26, 2023).

It appears that upon initial receipt of Plaintiff's FOIA request, the DHS Office of Biometric Identity Management initially acknowledged Plaintiff's request and assigned it request number 2022-OBFO-33539.  Pavlik-Keenan Decl. ¶ 14, enclosed herewith as Ex. 2 ("Mot. Ex. 2"); *see* Pavlik-Keenan Decl. at Attach. B.  DHS believes that the Office of Biometric Identity Management initially considered Plaintiff's request because he included a U.S. Customs and Border Protection receipt, which indicated on first glance that biometric records would be requested about him or other persons.  *Id*. ¶ 20.

Subsequently, DHS's Privacy Office acknowledged receipt of the same request, assigning it number 2022-HQFO-01083.  *Id*. ¶ 15; *see* Pavlik-Keenan Decl. at Attach. C.  Through what appears to be an administrative mistake, DHS, acting again through the Privacy Office acknowledged receipt of the same request for a third time, assigning it number 2022-HQFO-01264. *Id*. ¶ 20; *see* Pavlik-Keenan Decl. at Attach. D.  DHS has confirmed that all three tracking numbers refer to the same, single request Plaintiff has attached to his Complaint.  *Id*.

On May 25, 2022, DHS acknowledged receipt of the FOIA request with respect to number 2022-HQFO-01083, and informed Plaintiff in the same letter that his request was too broad or otherwise did not reasonably describe the records sought. *Id.* ¶ 15-16. The letter informed Plaintiff he could perfect his request by including specific information such as date, title, name, author, recipient, subject matter, or the DHS component or office that may have created or may control the records. *Id.* ¶ 16; *see* Pavlik-Keenan Decl. at Attach. C.

Similarly, on June 21, 2022, for request number 2022-HQFO-01264, DHS informed Plaintiff that his request was insufficiently detailed or otherwise did not reasonably describe the records sought. *Id.* ¶ 18-19. This letter also informed Plaintiff he could perfect his request by including specific information such as date, title, name, author, recipient, subject matter, or the DHS component or office that may have created or may control the records. *Id.* ¶ 19; *see* Pavlik-Keenan Decl. at Attach. D.

Additionally, in the June 1, 2023 Status Report, DHS, as a matter of additional courtesy, "invite[d] Plaintiff to clarify the request with the additional information requested." June 1, 2023 Status Report at 4.

Since then, Plaintiff has not, either directly to DHS, or in this litigation via any pleading, clarified or otherwise provided additional information about his request in any way. Pavlik-Keenan Decl. ¶ 19.

### D.    The Criminal Division

The Criminal Division received a request seeking, from January 1, 2012 to January 1, 2022:

1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication or series of communications) located in any location, that mentions any of the following:

a. an individual Denzil McKathan (or McCathan)

9

b. the address "14570 Cat Deakle"

c. the phone number "251-259-6324"

Compl. Ex. J.

The Criminal Division initially responded by letter dated May 4, 2022, advising Plaintiff that he failed to provide sufficient detail to enable the Criminal Division to conduct a search. Plaintiff responded by letter on May 26, 2022, and the Criminal Division responded by letter on September 20, 2022, administratively closing the case. Sept. 20, 2022 Letter, enclosed herewith as Ex. 3 ("Mot. Ex. 3"). Since then, the Criminal Division has concluded that based on information made available during litigation, it will discretionarily accept Plaintiff's FOIA request as perfected and conduct a search for records.

As such, although the Criminal Division joins the motion to dismiss Plaintiff's common law right of access and First Amendment claims, it does not presently seek dispositive relief as to the FOIA count against, but instead will do so following the completion of its response to the request directed to the Criminal Division.

### E.    EOUSA

EOUSA received a request seeking, from January 1, 2012 to January 1, 2022:

1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication or series of communications) located in any location, that mentions any of the following:

a. the individual Denzil McKathan (or McCathan)

b. the address "14570 Cat Deakle"

c. the phone number "251-259-6324"

d. the investigative case number shown in ex. A attached [sic] to this request

e. the unmasking of U.S. based users of the website imgsrc.ru

f. obtaining subscriber information of U.S. IP addresses associated with the website

imgsrc.ru

2. The grand jury transcript of the testimony of Christopher Anderson, a Homeland Security agent, who testified before a grand jury on November 20, 2014 in the southern distict [sic] of Alabama regarding Possession and reciept [sic] of child pornography

Compl. Ex. I.

As reported in the June 1, 2023 Status Report, EOUSA was able to conduct an initial search and located several thousand pages of potentially responsive documents, which EOUSA continues to review and release to Plaintiff. *See* June 1, 2023 Status Report at 2. Since the June 1, 2023 status report, EOUSA has determined that a more accurate count is the existence of approximately 2,900 pages of potentially responsive documents. EOUSA continues to process and release these documents to Plaintiff, and anticipates making its next document release on or about September 8, 2023.

As such, although EOUSA joins the motion to dismiss Plaintiff's common law right of access and First Amendment claims, it does not presently seek dispositive relief as to the FOIA count against, but instead will do so following the completion of its response to the request directed to EOUSA.

## III.   PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, filed the instant action on June 27, 2022. *See* ECF No. 1. The Administrative Office filed a motion to dismiss on October 21, 2022, ECF No. 8, and the State Department filed a motion to dismiss on November 18, 2022, ECF No. 15. The Court denied the motions by Minute Order on March 8, 2023. Minute Order. Defendants subsequently filed the amended answer on April 21, 2023. *See* ECF No. 21. On June 1, 2023, Defendants filed a Status Report, ECF No. 24, to which Plaintiff filed a response on June 26, 2023, ECF No. 25, and Defendants filed a reply on July 12, 2023, ECF No. 27.

On July 13, 2023, the Court entered a Minute Order construing part of Plaintiff's response as a motion to "authorize limited discovery," "order a *Vaughn* Index to be created," or set "an expedited summary judgment briefing schedule." Min. Order July 13, 2023 (quoting Pl's Resp.). The Court ordered Defendants to file "an opposition to the motion addressing the plaintiff's requested relief and providing supporting authority." *Id*. The Court further instructed that, "[l]egal arguments aside from the request for discovery, a Vaughn index, and an expedited briefing schedule will be addressed upon the filing of any dispositive motions." *Id*. Finally, the Court ordered Defendants to "file, together with the opposition on or before July 27, 2023, a status report proposing next steps in light of the parties' filings to date." *Id*.

On July 25, 2023, Defendants filed a motion to extend the time to respond to Plaintiff's motion, to August 24, 2023, to file consolidated dispositive motions and response to Plaintiff's motion, which the Court granted by Minute Order the same day. Minute Order July 25, 2023. Defendants now file this motion.

## STANDARD OF REVIEW

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under a motion to dismiss under Rule 12(b)(6), a complaint should be dismissed if it does

not contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 100 (D.D.C. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 555. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"—"that the pleader is entitled to relief." *Id*. ((citing Fed. R. Civ. Proc. 8(a)(2)). Moreover, although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although all well-pleaded allegations are presumed to be true, and all doubts and inferences are resolved in the pleader's favor and drawn in the light most favorable to the pleader, the court need not accept bald or controverted statements as true. *See Wiggins v. Hitchens*, 853 F. Supp. 505, 508 (D.D.C. 1994). Moreover, the court is "not bound to accept as true legal conclusions couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Summary judgment under Rule 56 is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue

of material fact. *See Celotex*, 477 U.S. at 322. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of his pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252. Thus, summary judgment is due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.* When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations describing its efforts to conduct an adequate search. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). It is not obligated to "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Finally, although a *pro se* plaintiff's complaint will be "held to less stringent standards than formal pleadings drafted by lawyers, *Jean-Pierre*, 880 F. Supp. 2d at 100 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), a court need not interpret "procedural rules in ordinary civil litigation" to "excuse mistakes by those who proceed without counsel." *Id.* (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

## DISCUSSION

## I.    Plaintiff's Claims Against the Administrative Office Should be Dismissed

Plaintiff brings suit against the Administrative Office under the common law right of access and the First Amendment to the U.S. Constitution.  For several reasons, Plaintiff cannot show the existence of subject-matter jurisdiction over Administrative Office or that he has asserted a cognizable claim for relief, and the Administrative Office should therefore be dismissed from this action under Civil Rule 12(b)(1) or 12(b)(6).

### A.    FOIA Does Not Apply to the Administrative Office

As a threshold, it is well-established that FOIA does not apply to the "courts of the United States."  5 U.S.C. § 551(1)(b); *see also Maydak v. Dep't of Just.*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003).  It is clear that "the Administrative Office of the United States Courts is an arm of the federal courts and therefore is not subject to FOIA." *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 232 (D.D.C. 2008).  Perhaps in recognition of this fact, Plaintiff neither asserted FOIA as a basis for his initial request for information to Administrative Office, *see* Compl. Ex. K, nor does he include the Administrative Office in his FOIA claim in this case.  *See* Compl. at 9-10.

The problem for Plaintiff is that, without FOIA, Plaintiff cannot show a requirement for any agency, including Administrative Office, to respond to his information request at all.  Plaintiff has not identified any statutory, regulatory, or other requirement that Administrative Office in particular respond to a request for information in any way, let alone by searching for responsive

documents and producing them.  He has, in effect, simply written a letter *asking* the Administrative Office to search for and produce documents, and he has not shown that Administrative Office has any duty, statutory or otherwise, to respond to this request at all.  *See generally Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 131 (D.D.C. 2013) ("FOIA requires federal agencies to release all records responsive to a request for production").

Administrative Office policy does prescribe procedures for the federal judiciary to produce or disclose official information or records.  *See Guide to Judiciary Policy, Vol. 20: Administrative Claims and Litigation, Ch. 8: Testimony and Production of Records*, available at https://www.uscourts.gov/sites/default/files/vol20-ch08.pdf (last visited Aug. 22, 2023).  But as a threshold matter, Plaintiff's request for information does not even fall within the scope of Chapter 8, as this chapter is found within the volume for "Administrative Claims and Litigation."  At the time of his request, Plaintiff was not involved with an administrative claim or litigation against the federal judiciary.  Further, Chapter 8 references *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which is the foundation for the procedures for the government to respond to a Rule 45 subpoena.  Plaintiff has not filed such a subpoena here, either.

Even assuming Plaintiff's request for information falls within the scope of Chapter 8, Plaintiff did not follow its requirements for properly requesting information.  The regulations require, among other things, a "written statement by the party . . . containing . . . an explanation of the nature of the testimony or records sought, the relevance of the testimony or records sought to the legal proceedings, and the reasons why the testimony or records sought, or the information contained therein, are not readily available from other sources or by other means."  *Ch. 8: Testimony and Production of Records* § 830(a).  Plaintiff's request to Administrative Office contained none of these.  *See* Compl. Ex. K.  Accordingly, Plaintiff failed to follow the

requirements set forth in Chapter 8.

In any event, Plaintiff has not shown the existence of subject-matter jurisdiction or a cause of action for the Court to consider a violation of, or to otherwise enforce, these regulations. It is well-established that federal courts do not have subject-matter jurisdiction over suits against the government where there has been no waiver of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Here, the regulations (which are not themselves statutory) specifically disclaim any waiver of sovereign immunity or the creation of a cause of action for violation of the regulations. *Ch. 8: Testimony and Production of Records* § 820(d) ("These regulations are not intended to, and do not . . . waive the sovereign immunity of the United States"), (e) ("These regulations . . . are not intended to create, do not create, and may not be relied on to create any right or benefit, substantive or procedural, enforceable in law or equity against the United States or against the federal judiciary or any court, office, or personnel of the federal judiciary."). There is no waiver of sovereign immunity or an identifiable cause of action which would give the Court subject-matter jurisdiction to consider Plaintiff's challenge to Administrative Office's non-disclosure.

**B.    There Exists No Common Law Right of Access**

Alternately, even assuming the Court has subject-matter jurisdiction to consider Plaintiff's request for information under the framework of the common law right of access, Plaintiff cannot show entitlement to the records he requests.

There is a "common law tradition of public access to records of a judicial proceeding." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980); *see generally Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("courts of this country recognize a general right to

inspect and copy . . . judicial records and documents"). But although there is a "strong presumption in favor of public access to judicial proceedings," *Metlife, Inc.*, 865 F.3d at 665 (quoting *Hubbard*, 650 F.2d at 317), precedent makes clear that the question of whether records of a judicial proceeding should be public arises specifically in the context of "cases involving motions to seal or unseal judicial records." *Id.* at 666 (collecting cases).

In other words, the appropriate procedure for requesting judicial records under the common law right of access is for a party to a case to move directly (or for an appropriate non-party to seek intervention) to the court overseeing the case for which the judicial records were sought. *See*, *e.g.*, *Metlife*, 865 F.3d at 666 (considering common law right of access where a party to a case claimed that the "district court improperly sealed parts of the summary-judgment briefs and joint appendix" and challenging that decision directly); *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 465 (D.D.C. 2018) (considering *Hubbard* right of access factors after "plaintiffs moved to unseal the class certification pleadings")

Here, even assuming that Plaintiff's request for information possibly could be interpreted as seeking judicial records, the records are clearly records pertaining to his cases in the U.S. District Court for the Southern District of Alabama or the Eleventh Circuit. *See McKathan v. United States*, 969 F.3d 1213 (11th Cir. 2020); *United States v. McKathan*, Crim. No. 14-0290, 2021 WL 707651 (S.D. Ala. Feb. 23, 2021). There is no suggestion that merely writing a request for information to the Administrative Office is sufficient to invoke the common law right of access outside of a motion for access made to the relevant judicial district and judicial officer. *See generally Nixon*, 435 U.S. at 599 ("the decision as to access is one best left to the sound discretion of the trial court").

Moreover, Plaintiff is not seeking "judicial records" subject to the common law right of

access at all.  "[N]ot all documents filed with courts are judicial records . . . rather, whether something is a judicial record depends on 'the role it plays in the adjudicatory process.  *Metlife*, 865 F.3d at 666 (quoting *S.E.C. v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (internal citations and quotation marks omitted).  Specifically, Plaintiff sought from Administrative Office:

    1.        The entire case file of Denzil McKathan, an individual.

    2.        Any and all communications, or series of communications between Raphael Goodwin Jr. and any officer of the United States Court for the Southern District of Alabama that mentions or is related to the supervision of Denzil McKathan

    3.        Any KRONOS or PACS data created by Raphael Goodwin Jr. that mentions or is relate [sic] to the supervision of Denzil McKathan

    4.        the unmasking of any U.S. person using the website imgsrc.ru

These are not trial records at all.  The reference to a "case file" may refer to the docket of his underlying criminal cases, in which case, as discussed above, his only remedy is to move for the relevant court to release the documents.  Alternatively, it is equally, if not more, likely that Plaintiff is seeking an investigative or law enforcement file, which would not be a judicial record at all. The remaining items sought are manifestly not judicial records, as neither plays a role in the adjudicative process, nor are such records submitted to the relevant court.  *See Am. Int'l Grp.*, 712 F.3d at 4 (documents are "not judicial records" if they were "never part of that [judicial decision], [and] it cannot have played any role in the adjudicatory process: though filing a document with the court is not sufficient to render the document a judicial record, it is very much a prerequisite").

Plaintiff cannot show that writing a request for information to Administrative Office is sufficient to invoke the common law right of access, or that he is seeking "judicial records" to which the common law right applies in the first place.  The Court should conclude that it does not have jurisdiction over Plaintiff's common law right of access claim against the Administrative Office, or, alternatively, conclude that he failed to state a cognizable claim.

###### C.    There is No First Amendment Right Of Access

Finally, Plaintiff's claim for a right of access to information under the First Amendment must fail too.

Although there is a "limited First Amendment right of access to a criminal trial," *Ctr. for Nat. Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 934 (D.C. Cir. 2003) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-77 (1980)), the "First Amendment does not 'mandate[] a right of access to government information or sources of information within the government's control.'" *Id*. at 934 (quoting *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality opinion)).    "The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." *Id.* (quoting *Houchins*, 438 U.S. at 14).  Rather, the First Amendment right is considered in the context of access to proceedings themselves, asking "whether the place and process have historically been open to the press and general public." *Id*. at 934 (quoting *Press-Enter. Co. v. Super. Ct. of Cal. for Riverside Cnty.*, 478 U.S. 1, 8 (1986)); *see also generally Press-Enter.*, 478 U.S. at 8 (considering First Amendment right of access to grand jury "selection of jurors").

Plaintiff is seeking documents from the judicial branch, not access to any proceeding. Although Plaintiff was and is a participant in several judicial criminal proceedings and collateral challenges, there is no indication he was or is unable to access any part of these proceedings. "[O]utside the context of criminal judicial proceedings or the transcripts of such proceedings," courts in the District of Columbia Circuit have *never* applied the First Amendment to document access. *Ctr. for Nat. Sec. Stud.*, 331 F.3d at 935.  Simply put, "there are no federal court precedents requiring, under the First Amendment, disclosure of information compiled during an Executive Branch investigation[.]" *Id.*

Alternately, as discussed above, because the documents Plaintiff seeks are not "judicial records" at all, neither are they "aspects of court proceedings" that would be subject to any First

Amendment right of access at all. *See Am. Int'l Grp.*, 712 F.3d at 5 (reports which were not "judicial documents" subject to the common law right of access were, for the same reason, not "aspects of court proceedings" that would fall within the First Amendment right of access).

Nothing suggests that the First Amendment grants Plaintiff a cause of action to compel the production of documents, or that his information request even falls within the First Amendment right of access to criminal judicial proceedings. The First Amendment claim should be dismissed.

## II.    Plaintiff's Common Law and First Amendment Claims Should Be Dismissed Against All Defendants

Indeed, Plaintiff's First Amendment and common law claims should be dismissed against all Defendants.

First, "the common law right of access is preempted by FOIA." *Ctr. for Nat'l. Sec. Stud.*, 331 F.3d at 936. Accordingly, for the State Department, Criminal Division, DHS, and EOUSA, which are the agencies to which the FOIA applies, Plaintiff's alternative common law right of access claim is pre-empted. The Court should dismiss the common law right of access claims against these defendants.

Second, as discussed above, it is equally well established that any First Amendment right of access is extremely narrow. None of the agencies are judicial or engaged in themselves conducting a criminal trial or judicial proceeding. Again: "outside the context of *criminal judicial proceedings* or the transcripts of such proceedings," courts have never applied the First Amendment to provide for document access. *Id.* at 935 (emphasis added). "[T]here are no federal court precedents requiring, under the First Amendment, disclosure of information compiled during an Executive Branch investigation[.]" *Id.*

Plaintiff cannot show the existence of a cause of action other than under FOIA for access to the information he seeks against the agency defendants, nor can he show entitlement to any such

documents under a common law right of access or First Amendment claim. Accordingly, the common law and First Amendment claims against the State Department, EOUSA, Criminal Division, and DHS should be dismissed.

### III.    Plaintiff's FOIA Claim Against DHS Should Be Dismissed

Plaintiff did not submit to DHS a request that "reasonably describes" the records sought and, as such, he did not file a legally sufficient FOIA request and does not state a claim for relief under FOIA. Additionally, the undisputed facts show that although DHS informed Plaintiff that his request did not reasonably describe records to be sought and invited him to refine or perfect his reply, Plaintiff did not do so, thus violating DHS FOIA regulations. Accordingly, DHS moves to dismiss, and alternatively, for summary judgment of the FOIA claims against it.

#### A.    Legal Standards

FOIA sets forth two requirements applicable here that are perquisites for a valid request: a request must (i) "reasonably" describe the records sought, and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002). The obligation to process a request only begins upon receipt of a valid request, i.e., one that satisfies these requirements. *Dale*, 238 F. Supp. 2d at 103.

Thus, a plaintiff fails to state a FOIA claim if its FOIA request fails to reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)); *Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request. A proper request must 'reasonably describe[ ]' the records sought[.]") (quoting 5 U.S.C. §

552(a)(3)(A)).

As a general matter, records are considered reasonably described "'if a professional employee of the agency familiar with the subject matter can locate the records with a reasonable amount of effort.'" *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012). But that general rule still requires that some "subject matter" or defined "class" of records be identified. *Am. Fed'n of Gov't Emps. ("AFGE") v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990); *cf. Am. Ctr. for L. & Just. ("ACLJ") v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021) (finding a request seeking documents "referencing or regarding in any way" eight topics to be too broad to allow the agency "to determine precisely what records are being requested").

Whether a FOIA request "reasonably describes" the records sought "is a purely legal question of statutory interpretation," and "'there is no inherent barrier'" in resolving that legal question on a Rule 12(b)(6) motion to dismiss. *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 274 (D.D.C. 2012) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). That is, whether a request is reasonably described is an objective test, and courts are equipped to make this determination by resort to the FOIA request alone. *See Dale*, 238 F. Supp. 2d at 105 (noting that document request was deficient "on its face"). In other words, agencies need not introduce evidence showing that, based on a particular document request, their professionals are incapable of locating the requested records with a reasonable amount of effort. *See Borden v. FBI*, No. 94-1029, 1994 WL 283729, at *1 (1st Cir. June 28, 1994) (per curiam) ("[T]he request . . . does not reasonably describe the records sought. Since the complaint shows on its face that the plaintiff did not present a proper request, we need not consider defendant's remaining arguments.") (citations omitted). The inquiry focuses on whether the request is objectively reasonably described. *Dale*, 238 F. Supp. 2d at 105.

Finally, overbroad and unreasonably burdensome requests are invalid because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives v. C.I.A.*, 720 F. Supp. 217, 219 (D.D.C. 1989).  Nor was FOIA intended to allow requesters to conduct a "fishing expedition" through agency files. *Dale*, 238 F. Supp. 2d at 104-05. This limitation protects the ability of federal agencies to prioritize their resources, while also providing the public reasonable access to agency records. *See*, *e.g.*, *Int'l Counsel Bureau v. Dep't of Def.*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010).  Ultimately, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *AFGE*, 907 F.2d at 209; *see also Freedom Watch v. State*, 925 F. Supp. 2d 55, 62-63 (D.D.C. 2013) (dismissing complaint where overbroad requests were "infirm from the beginning" regardless of defendants' response to the requests).  "The upshot is that, when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request."  *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

### B.    Plaintiff Did Not Submit a Valid FOIA Request

For a variety of reasons, Plaintiff did not submit a valid FOIA request to DHS.  The request is overbroad and unduly burdensome as written, and the Court may dismiss the FOIA claim on the face of the request.  Further, Plaintiff's failure to clarify, perfect, or otherwise refine his requests in response to DHS's multiple attempts to do so constitutes a failure to follow the agency's FOIA regulations or exhaust his administrative remedies, and thus his FOIA claim should be dismissed on these grounds, too.

DHS received a request seeking, from January 1, 2012 to March 1, 2022:

1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication) located in any location that menitons [sic] any of the following:

a. the individual Denzil McKathan (or McCathan)

b. the address "14570 Cat Deakle"

c. the phone number "251-259-6324"

d. the investigation case number listed in section 3 on the custody receipt for seized property and evidence included with this request

e. obtaining subscriber information associated with any IP address of U.S. based users of the website imgsrc.ru

f. the unmasking of any U.S. based user of imgsrc.ru

Compl. Ex. B.

### 1.    Name, Address, Phone Number, or Case ID Number

The first four requests seek "[any] and all records of any kind . . . located in any location" that merely mention Plaintiff's name, an address, a phone number, and a case ID number. As written, this is an overbroad and unduly burdensome request.

DHS is composed of twenty-two separate components and offices, with eight operational components, with an operating staff of more than 240,000 individual employees. Pavlik-Keenan Decl. ¶ 3-5; *see ACLJ*, 573 F. Supp. 3d at 86. DHS does not have a single, centralized FOIA program or records system. *Id*. at 6, 23. To conduct a search of "DHS," then, without specifying a component or office, would require dozens of searches on a component or office by office basis. *Id*. at 25. As such, DHS correctly determined that Plaintiff's request, which on its face did not specify any specific part of DHS for searching, would have required an unreasonable amount of effort absent any attempt by Plaintiff to narrow the search. *Id*. ¶ 25.

By asking for "any and all documents of any kind . . . located in any location," then, without limitation, Plaintiff is seeking a search of nearly a quarter million e-mail addresses, cell phones, computers, and even physical desks for records "of any kind" that merely *mention* his name, an address, cell phone number, or a case ID number. In a similar case, "a request for all records

'pertaining to the IMB supercomputer named Watson' would require a search of 'every [agency] office for any documents containing the word Watson.'  Such a 'massive undertaking' is unreasonably burdensome."  *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 226, 271-72 (D.D.C. 2022) (quoting *Nat'l Sec. Couns.*, 969 F.3d at 409-10).  The same is true here: Plaintiff's request for "any and all documents of any kind . . . located in any location" posed to DHS would, on its face, require precisely the search of "every [agency] office for any documents containing the word[s]" of his name, phone number, address, or Case ID would constitute a "massive undertaking" and be "unreasonably burdensome."  *Id*.; *see also Dale*, 238 F. Supp. 2d at 104 ("FOIA requests for all documents concerning a requestor are too broad."); *Latham v. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (where plaintiff failed to specify any specific component or field office of the agency to search, the request was overbroad and was properly declined).[2]

### 2.    Overly Broad Time Frame

For all six of his DHS requests, Plaintiff seeks information across a timeline of more than a decade, from January 2012 to March 2022.  In the context of Plaintiff's already overbroad "any and all documents of any kind . . . located in any location," a timeframe this long only confirms how unreasonably broad and burdensome the request is.  In *Hainey v. Department of Interior*, 925 F. Supp. 2d 34 (D.D.C. 2013), a similar request seeking "all internal communication" of only twenty-five discrete employees for merely a two-year period was held to be overbroad, as even

---

[2]    As will be discussed further below, Plaintiff was offered the opportunity to clarify or redraft his overbroad requests; at every opportunity, Plaintiff failed to do so.  The requests as originally submitted, therefore, are at issue, and Plaintiff may not now modify his requests in his briefing.  *See Brody v. Dep't of Just.*, No. 22-5043, 2023 WL 1511679, at *1 (D.C. Cir. Feb. 3, 2023) (plaintiff should have "redrafted it when the agency advised him of its overbreadth"); *ACLJ*, 573 F. Supp. 3d at 86 ("the Court, like the agency, must read the request as drafted, not as [plaintiff] might wish it was drafted"); *Kowalczyk v. Dep't of Just.*, 73 F.3d 386 (D.C. Cir. 1996) (agency is not required to divine a requester's intent).

that sort of a search of a small number of employes for just two years would be result in an "unreasonably burdensome search and review process." *Id.* at 45.  A decade of every DHS employee's e-mails, computers, and cell phones is, then, even more unreasonably burdensome.

### 3.    Overly Broad or Vague Subject Matter

Plaintiff's last two requests suffer from the same infirmities as his first four, but are also overbroad or vague in a different, equally invalid way.  He requests the same "any and all documents of any kind . . . located in any location that menitons [sic] any of . . . obtaining subscriber information associated with any IP address of U.S. based users of the website imgsrc.ru[, or] the unmasking of any U.S. based user of imgsrc.ru."  These two requests seek information that is substantially broader than a discrete search for single name, phone number, address, or case ID number.  These two requests appear to be seeking entire categories of an investigative technique or type of investigation.  This is, then, more of a request seeking what would amount to a search for "'each and every . . . criminal case' in order to determine whether it contains any evidence of the [information] that appellant requests." *Krohn v. Dep't of Just.*, 628 F.2d 195, 198 (D.C. Cir. 1980).  Such a "request is fatally flawed by lack of a reasonable description." *Id.*[3]

Further, it is not immediately apparent on the face of Plaintiff's request what sort of a search would be reasonable to capture the information sought.  The request is too vague without further refinement or clarification—which, as will be discussed, Plaintiff was given several

---

[3]    Put in the context of Plaintiff's efforts in an unrelated, collateral matter to challenge his underlying criminal conviction, it is now abundantly clear that this is a classic fishing expedition. *See Dale*, 238 F. Supp. 2d at 105.  Although not dispositive, it explains Plaintiff's efforts to search for material related to subscriber information or unmasking of users over a ten-year period, for which most of the responsive documents will have nothing to do with his instant case.  Of course, "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives*, 720 F. Supp. at 219.

opportunities to do, and declined.  *See Freedom Watch v. CIA*, 895 F. Supp. 2d at 228 (a request is unreasonably vague "if a professional agency employee cannot locate" the material).

"[W]hen the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns.*, 969 F.3d at 410.  DHS properly declined to respond to Plaintiff's request because it failed to reasonably to describe what was sought, as required by the statute.[4]

### C.    Failure to Comply with Regulations or to Exhaust

Alternatively, DHS informed Plaintiff that his initial request was unduly broad or otherwise did not reasonably describe the records he sought, provided him with an opportunity to refine or perfect his request, and specified the kind of additional information that would be required. Plaintiff did not fix his request in response to any of these requests, nor did he do so in a filing in the instant case.  His failure to do so means that he cannot now bring a FOIA challenge.

Under DHS regulations, a requester "must describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. A reasonable description contains sufficient information to permit an organized, non-random search for the record based on the component's filing arrangements and existing retrieval systems."  6 C.F.R. § 5.3(b).  Further, "[i]f a request does not adequately describe the records sought, DHS may at its discretion either administratively close the request or seek additional information from the requester."  6 C.F.R. § 5.3(c).

---

[4]      In the alternative, DHS regulations impose requirements similar to those in the FOIA statute for reasonably describing the records sought.  Here, as Plaintiff's request did not reasonably describe the desired records and he thus did not submit a request that qualified as a FOIA request, for the same reason he did not submit a request that satisfied the separate regulatory requirement in DHS's FOIA regulations, and thus Plaintiff's claims fail because he failed to follow DHS regulations, as FOIA requires. *See generally Dale*, 238 F. Supp. 2d at 103-05 ("request on its face fails to comply with the requirements of FOIA and applicable IRS regulations").

DHS informed Plaintiff—on at least three separate occasions, in the May 25, 2022 letter, the June 21, 2022 letter, and in the June 1, 2023 status report—of the deficiencies, and invited him to more reasonably describe or narrow his search. *See* Pavlik-Keenan Decl. Attachment C and Attachment D; June 1, 2023 Status Report at 4. He did not do so on any occasion, either directly with DHS or in his filings before this Court. Pavlick-Keenan Decl. ¶ 19-20.

Whether this is considered solely a failure to comply with the DHS's FOIA regulations under 5 U.S.C. § 552(a)(3)(A)(ii), or considered a broader "failure to exhaust," it is clear that Plaintiff's failure to respond to DHS's repeated efforts to work with him to clarify his request means that he cannot now state a claim for a FOIA violation. *See*, *e.g.*, *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 115 (D.D.C. 2011) ("[T]he Marine Corps represents that it complied with these regulations [to notify requester of deficient requests] by referring the request to the Army and informing the plaintiff that additional information regarding Morrison's affiliation with the Marine Corps was needed. . . . The plaintiff never responded to the Marine Corps' letter. . . . Accordingly . . . plaintiff failed to exhaust his administrative remedies."); *Keys v. Dep't of Homeland Sec.*, Civ. A. No. 08-726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009) ("Plaintiff failed to reasonably describe the records sought because he did not respond to EOUSA's letter notifying him that he must identify specific offices to be searched. In addition, Plaintiff did not administratively appeal the determination made in EOUSA's letter. Therefore, Plaintiff failed to exhaust his administrative remedies with respect to his 2004 FOIA request.").

## IV.    The State Department Conducted an Adequate Search

After the Court's Minute Order of March 8, 2023, the State Department considered the best way to conduct an adequate search responsive to Plaintiff's request. Because Plaintiff did not submit any information that would lead to an inference that any specific bureau, office, or overseas post would contain responsive records, the State Department concluded that it would be reasonable

to search its electronic records database (the eRecords Archive) and its searchable index of retired records (the Retired Records Inventory Management System). *Id.* ¶ 13-16.  The State Department then conducted a search using the terms provided by Plaintiff, which revealed no results. *Id.* at 17. The State Department informed Plaintiff of this fact by letter dated April 17, 2023.  June 1, 2023 Status Report Ex. 1, ECF No. 24.  These undisputed facts show that the State Department has conducted an adequate search and should now be granted summary judgment.

An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("The adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").  FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in a particular place.  *Kowalczyk*, 73 F.3d at 388; *see also Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does FOIA require that an agency search every record system.  *Oglesby*, 920 F.2d at 68.

Courts in this circuit have held that "[a]n agency fulfills its obligations under FOIA if . . .

its search was reasonably calculated to uncover all relevant documents." *Clarke v. Dep't of Just.*, Civ. A. No. 18-2192 (ACR), 2023 WL 2536264, at *3 (D.D.C. Mar. 13, 2023) (cleaned up); *Neese v. Dep't of Just.*, Civ. A. No. 19-1098 (CJN), 2022 WL 898827, at *3 (D.D.C. Mar. 28, 2022) (an agency must show a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.") (internal quotations and citations omitted). And courts have held that where a plaintiff "never identified particular locations that the agency should look, [the defendant agency] acted reasonably in deciding to confine its inquiry to [its] central filing system." *Id.* at *3.

Here, where Plaintiff presented no information to suggest that any particular bureau, office, or overseas post would be more likely than any other location to have responsive documents, a decision to search the eRecords Archive and the Retired Records Inventory Management system was a reasonable one.[5]  There is no suggestion in the record that overseas bureaus or consular affairs offices would possess any information about Plaintiff, *see* Weetman Decl. at ¶ 14-16, nor has he put forward any argument to suggest this.  Nor did his request suggest that any specific bureau or office of the State Department would be more likely to have responsive documents, either.  Searching the State Department's central filing systems, then, is an eminently reasonable search in this context.  *See Campbell v. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998) ("When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any

---

[5]     The State Department's eRecords Archive is its central repository for storing permanent electronic records transferred to the Bureau of Administration since January 1, 2017 and retired records in digital form.  Weetman Decl. ¶ 15.  The Retired Records Inventory Management System is a searchable database that automates the processing of records retired to the Records Service Center and tracks the status of materials received at the Records Service Center.  The retired file manifests serve as an index of the contents of retired paper and electronic files.  *Id.* ¶ 16.

marginal return"); *see also Oglesby*, 920 F.2d at 68 (FOIA does not require an agency to search every one of its records' systems).[6]

Without further details from Plaintiff, a search of the State Department's two centralized records systems using Plaintiff's proposed search terms was reasonable. The State Department performed an adequate search in response to Plaintiff's FOIA request, and therefore the Court should grant summary judgment in favor of the State Department and dismiss it from the action.

## V. Plaintiff's Requests for Discovery, a *Vaughn* Index, and Expedited Summary Judgment Briefing Schedule Should Be Denied

Finally, Plaintiff's request for limited discovery is unwarranted, Plaintiff's request for a *Vaughn* index is premature until summary judgment briefing on the claims against EOUSA and the Criminal Division, and an expedited summary judgment briefing schedule should not be set until after resolution of the instant motion.

### A. Request For Limited Discovery Should Be Denied

Plaintiff's request for limited discovery should be denied in full. Plaintiff bases his request on the unfounded assertion that the State Department "was lying then or lying now" concerning the difficulties in completing a search. Resp. to Status Report at 6.

"'[D]iscovery in a FOIA action is generally inappropriate.'" *CREW v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 55–56 (D.D.C. 2006) (quoting *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 335 F. Supp. 19, 25 (D.D.C. 2000)). There must be "evidence of some wrongdoing such as . . . . a material conflict in agency affidavits" before limited discovery has been ordered. *Id.* (citing *Long v. Dep't of Just.*, 10 F. Supp. 2d 205 (N.D.N.Y. 1998)). Put another way, "in the

---

[6]    The fact that no records were found is, of course, not evidence of any bad faith, but merely leads to the conclusion that the State Department did not have any responsive records. *See Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("agency's failure to turn up a particular document . . . does not undermine the determination that the agency conducted an adequate search for the requested records").

FOIA context, courts have permitted discovery only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents." *Cole v. Rochford*, 285 F. Supp. 3d 73, 76–77 (D.D.C. 2018).

As previously discussed, there is no falsehood or conflict in the State Department's reports—it would indeed have been a monumental undertaking to engage in a no-holds-barred search of every bureau, office, or overseas post of the State Department (which has no single records system that can be searched). *See* State Dept's Mot. to Dismiss at 9, ECF No. 15. Instead, after the Court's Minute Order of March 8, 2023, the State Department carefully considered how to best conduct a search for Plaintiff's required search terms and concluded that the most likely search would be of its centralized records systems. *See* Weetman Decl. ¶ 12-14. There is no contradiction between these two statements and, therefore, no evidence or facts permitting an inference of bad faith on the part of the State Department. The request for discovery should be denied in full.

## B.    A *Vaughn* Index At This Time Is Premature

Plaintiff's request for a *Vaughn* index is premature and should also be denied at this time.[7]

"When a federal district court reviews agency decisions to withhold information requested through FOIA, a court can request that an agency produce a detailed 'index' of the information withheld." *Pinson v. Dep't of Just.*, 975 F. Supp. 2d 20, 32 (D.D.C. 2013); *see generally Vaughn v. Rosen*,

---

[7]    Notably, an agency is under no obligation to produce a *Vaughn* index at all. A *Vaughn* index is a tool that is used to guide the Court as to merits of a defendant's withholdings *See NRDC, Inc. v. NRC*, 216 F.3d 1180, 1190 (D.C. Cir. 2000) (rule that agency must provide a *Vaughn* index in FOIA litigation "is a rule that governs litigation in court and not proceedings before the agency"); *Schwarz v. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a 'search certificate' or a 'Vaughn' index on an initial request for documents. The requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court.").

484 F.3d 820, 826 (D.C. Cir. 1973).  But "a *Vaughn* index is not typically required until the Defendants must factually support a motion for summary judgment." *Id.* (citing *Schoenman v. F.B.I.*, 604 F. Supp. 2d 174, 178 (D.D.C. 2009).  Generally, if a FOIA case is "is not yet in a posture for dispositive briefing, the Plaintiff's motion [for a *Vaughn* index] is premature." *Id.; see also Schwarz*, 131 F. Supp. 2d at 147 ("The requirement for . . . *Vaughn* indices is imposed in connection with a motion for summary judgment filed by a defendant") (internal citation omitted).

Because EOUSA is still processing and releasing its document production to Plaintiff, and the Criminal Division is engaging in a search for responsive documents, the same is true here.  A summary judgment motion by either Defendant defending the adequacy of its search or document withholdings is simply premature until the full sets of responsive documents have actually been released, and for the same reason it is likewise not an appropriate time for Plaintiff to challenge the adequacy of a search or the exemptions asserted.[8]  And because EOUSA and the Criminal Division have not moved for summary judgment with respect to the actual production of documents yet, there is no reason for them to provide a *Vaughn* Index at this stage of the case. Defendants will appropriately support their withholdings when they move for summary judgment.

Plaintiff appears to be aware of this, only stating in his status report reply that any claimed exemptions "will be contested"—note the future tense.  Resp. at 6.  In any event, Plaintiff has not yet identified any specific document or set of documents with exemptions that he wishes to challenge —nor can he in full yet, as the document production has not finished.  In all events, waiting until EOUSA has completed its full set of document productions and the Criminal Division

---

[8]     Although summary judgment is appropriate to dismiss Defendants State Department and, in the alternative, DHS from this action, a *Vaughn* index is not warranted here because the State Department did not withhold information, it merely did not find any responsive documents, and DHS did not withhold information because it did not receive a legally sufficient FOIA request in the first place.

has conducted a search (and, if responsive documents are located, completed its document production) and only then requiring a *Vaughn* index responsive to Plaintiff's challenge, should he make one, in support of a single set of briefing, is the most efficient use of the Court's resources. Accordingly, the request for a *Vaughn* index should be denied at this time.

### C.    An Expedited Summary Judgment Briefing Schedule Should Be Denied As Premature

Finally, Plaintiff already has been granted an expedited summary judgment briefing schedule in the sense that this omnibus motion contains motions for summary judgment for several of the agency defendants, seeking the dismissal of all but EOUSA and the Criminal Division from this case. Whether or not the Court grants this motion, it would be premature to set a summary judgment briefing schedule for EOUSA and the Criminal Division before they have even finished processing their initial document releases or searches (or for any other component should the Court decline to dismiss them from this action before they may conduct searches or release documents).

"District courts enjoy broad discretion when deciding case management and scheduling matters." *McGehee v. Dep't of Just.*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019). Here, prior to the resolution of the instant dispositive motions, and prior to the initial completion of document production by EOUSA or an adequate search by the Criminal Division, setting a summary judgment briefing schedule for whatever remaining defendants exist is premature and is best revisited at the conclusion of EOUSA's document production and the Criminal Division's search (and any records release that may follow).

*        *        *

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's common law right of access and First Amendment claims and dismiss all other claims against the Administrative Office, DHS, and State Department.  Further, Plaintiff's request for limited discovery should be denied in full, and Plaintiff's request for a *Vaughn* index and for an expedited summary judgment briefing schedule should be denied as premature until EOUSA and the Criminal Division finish their responses to Plaintiff's FOIA requests.


Dated: August 24, 2023
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ Michael David Wagner
     MICHAEL DAVID WAGNER
     Special Assistant United States Attorney
     601 D Street, NW
     Washington, D.C. 20530
     (202) 252-2435
     Michael.Wagner3@usdoj.gov

     *Attorneys for the United States of America*