UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENZIL E. MCKATHAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, et al.,<br><br>　　　　Defendants. | Civil Action No. 22-1865 (DLF) |

**REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION**

Defendants the Department of Homeland Security ("DHS"), Department of State ("State Department"), Executive Office of United States Attorneys ("EOUSA"), Administrative Office of U.S. Courts ("Administrative Office"), and the Criminal Division of the Department of Justice ("Criminal Division"), by and through undersigned counsel, respectfully submit this reply in support of Defendants' partial motion to dismiss and for summary judgment (ECF No. 31).

**I.　Procedural History**

On June 26, 2023, Plaintiff filed a response to Defendants' Status Report of June 1, 2023, which the Court construed as a motion to "authorize limited discovery," "order a Vaughn Index to be created," or set "an expedited summary judgment briefing schedule." ECF No. 25. On August 24, 2023, Defendants filed a partial motion to dismiss and for summary judgment and combined response to Plaintiff's motion. ECF No. 31. On September 11, 2023, the Court received Plaintiff's combined opposition to Defendants' partial motion to dismiss or for summary judgment and reply in support of Plaintiff's motion. ECF No. 33. Defendants now file this reply in support of the partial motion to dismiss and for summary judgment.

## II. Collateral Proceedings

Perhaps inadvertently encouraged by Defendants' recitation of the history of his previous criminal convictions and appeals, Plaintiff spends much of his opposition memorandum engaged in a lengthy explication of the "procedural atrocities" he allegedly has suffered since 2014. Pl's Opp. at 6-8, ECF No. 33. He asserts that those alleged wrongs provide a "good faith basis" for him to request the records at issue in this case. *Id*. at 8.

To the extent Defendants contend that this Freedom of Information Act ("FOIA") suit fails in whole or in part, Defendants do so under the legal standards applicable to all FOIA requestors. It is, of course, well established that "the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Ctr. for Pub. Integrity v. Dep't of Def.*, 486 F. Supp. 3d 317, 331 (D.D.C. 2020) (quoting *In re Sealed Case*, 121 F.3d 729, 738 n.5 (D.C. Cir. 1997)). That said: that Plaintiff may have sought by other means to obtain these or similar records, such as to support his ongoing attempts to overturn his convictions, has no bearing on the FOIA issues presented in this litigation. *See* Pl's Opp. at 10. Plaintiff may not use this suit to make an end run around, or otherwise interfere with, his post-conviction proceedings. *See generally United States v. Ring*, 47 F. Supp. 3d 38, 42 (D.D.C. 2014) ("A First Amendment right of access does not attach to criminal discovery materials not admitted into evidence, since these documents are not a 'traditionally public source of information.'") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

## III. Administrative Office

As the Administrative Office previously showed, it is not subject to the FOIA, and there is no other legal mechanism to compel the Administrative Office to search for or release documents in response to Plaintiff's request. *See Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 131 (D.D.C. 2013) (FOIA only requires executive "federal agencies" to release records).

As for Plaintiff's assertion that discovery is warranted to determine if the Administrative Office has documents responsive to his request, this is a non sequitur, as there is no mechanism to compel the Administrative Office to search in the first place and, therefore, it is not relevant whether the Administrative Office has responsive documents at all. Such discovery wrongly would compel an Administrative Office search for documents that it has no obligation to perform. *See generally Ocasio v. Dep't of Just.*, 67 F. Supp. 3d 438, 441 (D.D.C. 2014) ("Judicial subpoenas in the FOIA litigation context are simply not the appropriate mechanism to obtain these documents [from parties that were not the subject of a FOIA request].").

Finally, insofar as Plaintiff asserts the existence of subject-matter jurisdiction by citing a variety of cases noting that, in general, a court may enjoin unconstitutional action, this puts the cart before the horse: Plaintiff has identified no Constitutional or statutory right or obligation to this information at all. There is, therefore, no unlawful action for a court to remedy that could provide equitable jurisdiction.[1]

### A.     Common Law and First Amendment Claim

Although Plaintiff argues that the Guide to Judiciary Policy should not overcome a common law right of access, this is beside the point: Plaintiff has not presented any substantive argument in his opposition that the common law right of access permits him to maintain jurisdiction or a cause of action against the Administrative Office. Pl's Opp. at 9-11. "[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the

---

[1] This too assumes the exercise of equitable jurisdiction is even permissible absent a waiver of sovereign immunity or that the Court should choose to exercise equitable jurisdiction at all. *See generally Hubbard v. Adm'r, EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992) (en banc) (no equitable relief available where "Congress has not expressed an unequivocal intent to waive sovereign immunity for such relief"); *Am. Rd. & Transp. Builders Ass'n v. EPA*, No. 12-5244, 2013 WL 599474, at *1 (D.C. Cir. Jan. 28, 2013) ("[A]ppellant has not shown that the district court should have invoked its equity jurisdiction.").

defendant, the court may treat those arguments as conceded[.]" *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 208 (D.D.C. 2016) (quoting *Lockhart v. Coastal Int'l. Sec., Inc.*, 905 F.Supp.2d 105, 118 (D.D.C. 2012)).  The Court should do so here and dismiss the common law right of access claim against the Administrative Office.

With respect to his First Amendment claim, Plaintiff submits that he seeks more than a "right of access," arguing that he also may obtain documents via the "guarantees of free speech, freedom of the press, freedom to associate for purposes of litigation, access to the courts, right to know, and right to receive information." Pl's Opp. at 10 (quoting Compl. ¶ 46, ECF No. 1).  But, as discussed in the motion to dismiss and for summary judgment, the "First Amendment does not 'mandate[] a right of access to government information or sources of information within the government's control.'" *Ctr. for Nat. Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 934 (D.C. Cir. 2003) (quoting *Houchins v. KQED*, 438 U.S. 1, 15 (1978) (plurality op.)).  The "Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." *Id.*  The only recognized right of information access contained within the First Amendment itself is the "limited First Amendment right of access to a criminal trial." *Id.* (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-77 (1980)).  Since the only avenue under the First Amendment is this limited right of access, which as discussed previously, does not create jurisdiction or a cause of action against the Administrative Office, this count should also be dismissed.

Thus, Plaintiff has not shown a Constitutional, statutory, or regulatory requirement for the Administrative Office to comply with his request, and accordingly neither is there subject-matter jurisdiction over such a claim, nor does Plaintiff state a claim for relief.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (subject-matter jurisdiction), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (claim for relief). The Court should dismiss the Administrative Office claims.

**IV.     Common Law and First Amendment Claims Should be Dismissed Against All Agency Defendants**

Plaintiff concedes that FOIA pre-empts common law right-of-access claims against the agency defendants. Pl's Opp. at 5 (citing *Ctr. for Nat. Sec. Stud.*, 331 F.3d at 936). Plaintiff also does not argue against, and thus concedes, Defendants' showing that the First Amendment claim against the agency defendants should be dismissed as well. *See Jacobson*, 168 F. Supp. 3d at 208. Accordingly, the Court should dismiss the common law right of access and First Amendment claims against all Defendants.

**V.     Department of Homeland Security**

The plain text of Plaintiff's request to DHS seeks "any and all records of any kind . . . without limitation . . . located in any location" for a more than ten-year period. This is not a valid request, nor do the facts show that it was properly exhausted.

As shown, FOIA sets forth two requirements applicable here that are prerequisites for a valid request: a request must (i) "reasonably" describe the records sought, and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002). The obligation to process a request only begins upon receipt of a valid request, i.e., one that satisfies these requirements. *Dale*, 238 F. Supp. 2d at 103. A plaintiff fails to state a FOIA claim if its FOIA request fails to reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)). Plaintiff has not done so here.

To reiterate, Plaintiff's complete FOIA request sought, for a period of more than a decade between January 1, 2012 to March 1, 2022:

5

> 1. Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication) located in any location that menitons [sic] any of the following:
>
>> a. the individual Denzil McKathan (or McCathan)
>>
>> b. the address "14570 Cat Deakle"
>>
>> c. the phone number "251-259-6324"
>>
>> d. the investigation case number listed in section 3 on the custody receipt for seized property and evidence included with this request
>>
>> e. obtaining subscriber information associated with any IP address of U.S. based users of the website imgsrc.ru
>>
>> f. the unmasking of any U.S. based user of imgsrc.ru

Compl. Ex. B.

"[T]he Court, like the agency, must read the request as drafted, not as [plaintiff] might wish it was drafted." *Am. Ctr. for L. & Just. ("ACLJ") v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 86 (D.D.C. 2021); *see Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). When Plaintiff states in his request that he is seeking "[a]ny and all records of any kind . . . without limitation . . . located in any location" for a ten-year period, the agency and the Court must take it as written. Nothing in this request suggests that it can or should be narrowed to one of the twenty-two separate components or offices within DHS; nothing in this request suggests that it can or should be narrowed to a subset of the more than 240,000 individual employees working for DHS; nothing in this request suggests that it can or should be narrowed to any of the dozens of non-centralized records systems in DHS's control.[2]  See Pavlik-Keenan Decl. ¶ 3-5, Def's Mot. Summ. J. Ex. 2,

---

[2]   Plaintiff's claim that other agencies were able to act on his request is not relevant because each agency stands apart with respect to FOIA compliance. *See generally Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("[d]isclosure by one federal agency does not waive another agency's right to assert a FOIA exemption.").

ECF No. 31; *see also ACLJ*, 573 F. Supp. 3d at 86.

First, Plaintiff argues that the request for "discrete" terms such as his name or address reasonably describes the records sought. While it is true that the first four subjects suggest relatively simple search terms, this is not the end of the story. Courts have concluded that that a request for all records in any location about even a discrete subject matter, such as Plaintiff's name, that would require a search of every database and every e-mail account is overbroad and unduly burdensome. *See, e.g.*, *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 409–10 (D.C. Cir. 2020) (a request for all records "pertaining to the IBM supercomputer named Watson" would require a search of "every [agency] office for any documents containing the word Watson. . . . as drafted, the request called for an unreasonably burdensome search."); *Dale*, 238 F. Supp. 2d at 104 ("FOIA requests for all documents concerning a requestor are too broad.") (citing *Keese v. United States*, 632 F. Supp. 85, 91 (S.D. Tex. 1985) ("Requests for all documents containing a requester's name are not reasonably specific as required by the FOIA.").

Plaintiff's citation to *Shapiro v. CIA*, 170 F. Supp. 3d 147 (D.D.C. 2016) is unavailing. First, Plaintiff's request does not, in total, *only* seek the discrete information of his name, address, phone number or case information; parts five and six seek information about much broader topics that may or may not be susceptible to a simple single-keyword search. *Compare id*. at 154 (entire request only sought name and three aliases), *with* Compl. Ex. B (also seeking information on subscriber information and unmasking). Additionally, an agency may decline a request that does not specify a clear sub-agency or office for search, even within a single agency (let alone within DHS's twenty-two distinct agencies and subcomponents). In *Latham v. Department of Justice*, 658 F. Supp. 2d 155 (D.D.C. 2009), a request was properly declined, as it failed to identify specific components or field offices to search. *Id*. at 161. *See also ACLJ*, 573 F. Supp. 3d at 87 ("Decisions

from a district court do not create a floor for what a FOIA request must do to pass muster.").

Moreover, Plaintiff's citation to *Center for Immigration Studies v. U.S. Citizenship & Immigration Services*, 628 F. Supp. 3d 266 (D.D.C. 2022), supports, not rebuts, Defendants' position. Here, a request for "all emails" from merely three officials for just nine months from a single component of the Department of Homeland Security was unduly burdensome. *Id.* at 275.[3] Moreover, that case relies on *ACLJ*, noting that where a fairly read search necessarily would "encompass every DHS employee," a "responsive search thus required a search of communications from 'any and all employees' at multiple agencies" and "would likewise be unreasonable." *Id.* at 272 (quoting *ACLJ*, 573 F. Supp. 3d at 86-87) (internal citations omitted).

Plaintiff also attempts to defend his request by arguing that his request "did not seek 'all internal communication' of even one employee[.]" Pl's Opp. at 13. But the text of his request quite clearly seeks "[a]ny and all records of . . . letter . . . e-mail chain . . . text message, or any other electronic communication[] located in any location that [mentions] any [of the six subject areas]." Thus, the plain language of the request encompasses communications including letters, e-mail chains, or text messages, of each and every of the more than 240,000 employees at DHS. It is nonsensical to request e-mails and text messages and then claim this is not a request for communications for "even one employee." *See ACLJ*, 573 F. Supp. 3d at 86 ("If [requestor] had intended to include only the Secretary's immediate staff, it should have said so from the start.").

For the same reason, Plaintiff's invocation of the DHS records sheet is unavailing: if Plaintiff had wanted a search for just that specific sub-agency or location, he should have said so. *See, e.g.*, *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996) (where "original FOIA

---

[3] Plaintiff ultimately does not dispute that he is seeking a ten-year date range for his request. *See* Pl's Opp. at 14.

request . . . made no reference to the New York field office or, indeed, to New York," the "request, therefore, did not enable the FBI to determine that the New York field office had responsive records."). As previously discussed, Plaintiff was given multiple opportunities to refine his search parameters to subcomponents or agencies of DHS, but he repeatedly failed to do so. Pavlik-Keenan Decl. ¶ 19-20; *see Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (appropriate to decline request where requestor "declined the [agency's] repeated attempts [to] clarify the request"). Plaintiff may not now modify his requests in this litigation after the fact. *See Brody v. Dep't of Just.*, No. 22-5043, 2023 WL 1511679, at *1 (D.C. Cir. Feb. 3, 2023) (plaintiff should have "redrafted it when the agency advised him of its overbreadth"). And "an agency need not conduct research in response to a FOIA request." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003).

With respect to items five and six, despite what Plaintiff argues, *Krohn v. Department of Justice*, 628 F.2d 195 (D.C. Cir. 1980), is *narrower* than Plaintiff's request here—the requestor there sought a search for only one year, one type of ruling, and across only three federal districts. *Id.* at 198. Here, by contrast, Plaintiff seeks "[a]ny and all records of any kind . . . without limitation . . . located in any location" for a ten-year period for two potentially very broad topics concerning obtaining subscriber information and unmasking. Plaintiff's citation to *Bader Family Foundation v. Department of Education*, 630 F. Supp. 3d 36 (D.D.C. 2022), is likewise inapposite because there, as well, the FOIA request was much narrower, seeking only a specific document type (e-mails), for a small number of people (twelve), and for a very short period of time (five months). *Id.* at 39. (And in any event the challenge in *Bader* was to search adequacy, not the request's propriety. *Id.*)

*ACLJ* is again instructive where the Court, based on the plain text of a request, granted a

motion to dismiss when the

> plain language of [the] request would require, at a minimum, a review of communications by "any and all employees" at three agencies (ICE, CBP, and USCIS) that might be "remotely related" to [requestor's] eight categories, "without any limitation on the method or form of communication." . . . And recall that all DHS employees would likely need to be included. That type of search would be "unduly burdensome" . . . and would be a "massive undertaking." The agency need not respond to such a request.

*ACLJ*, 573 F. Supp. 3d at 87 (internal citations and quotation marks omitted). The same is true here; even without the "remotely related" language, the plain language of Plaintiff's request for "[a]ny and all records of any type . . . without limitation . . . in any location" for a ten-year span is equally unduly burdensome on its face. The Court should find that Plaintiff has failed to submit a valid FOIA request.

Finally, Plaintiff does not rebut the argument that he has failed to exhaust his administrative remedies by failing to comply with DHS's FOIA regulations concerning his refusal to refine or narrow his request. Although he makes much of the fact that the letters he received did not say they were final or denials of his request, this is precisely the point: DHS acted to clarify and narrow his request without immediately rejecting it outright, and Plaintiff never did so (nor, even in his opposition brief, does he argue he attempted to do so). As discussed, DHS informed Plaintiff—on at least three separate occasions, in the May 25, 2022 letter, the June 21, 2022 letter, and in the June 1, 2023 status report—of the deficiencies, and invited him to more reasonably describe or narrow his search. *See* Pavlik-Keenan Decl. Attach. C and D; June 1, 2023 Status Report at 4. He did not do so on any occasion, either directly with DHS or in his filings before this Court. Pavlick-Keenan Decl. ¶ 19-20. He never did so, thus failing to exhaust his administrative remedies. *See, e.g.*, *Keys v. Dep't of Homeland Sec.*, Civ. A. No. 08-726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009) ("Plaintiff failed to reasonably describe the records sought because he did not respond to EOUSA's letter notifying him that he must identify specific offices to be searched. In addition,

10

Plaintiff did not administratively appeal the determination made in EOUSA's letter. Therefore, Plaintiff failed to exhaust his administrative remedies with respect to his 2004 FOIA request.").

Plaintiff's request for ten years' worth of "[a]ny and all records of any kind . . . without limitation . . . located in any location" is overly broad and unduly burdensome, neither reasonably describing the records sought nor complying with DHS's FOIA regulations. "Requesters may not make unreasonable demands of an agency, such as by seeking whatever document they want from whomever and wherever they choose. Despite its seemingly boundless breadth, FOIA still 'protect[s] agencies from undue burdens.'" *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271 (quoting *Inst. for Just. v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019)). The motion to dismiss or for summary judgment should be granted and the claim against Defendant DHS should be dismissed.

## VI.     State Department

### A.     No Misrepresentations, Contradictions, or Evidence of Agency Misconduct

Plaintiff again wrongly accuses the State Department of lying. Like the request to DHS, Plaintiff's State Department request likewise seeks "[a]ny and all records of any kind . . . without limitation . . . located in any location[.]" Compl. Ex. E. Because the State Department was initially "bound to read [the request] as drafted," *Miller*, 730 F.2d at 777, the plain language of the request would require the State Department to search every office, bureau, and overseas post to fulfill, for example, the "located in any location" demand. Since then, as discussed, the State Department has merely taken the position that it was reasonable to search its two primary records systems for the terms Plaintiff submits, given the lack of any refining information from Plaintiff. 1st Weetman Decl. ¶¶ 12-14, Mot. Summ. J. Ex. 1. There is no conflict between these two positions.

### B.     State Department Conducted an Adequate Search

In reply to Plaintiff's contention that the State Department did not conduct an adequate search, the State Department will offer two points of clarification. First, although the eRecords

11

Archive *primarily* contains e-mails since January 1, 2017, it does not *exclusively* do so, and contains millions of pages of retired records and e-mails from before 2017, as well.  2nd Weetman Decl. at ¶¶ 9, 11, enclosed herein as Exhibit A to the Reply.  Second, Plaintiff's citation to the State Department's Central Foreign Policy Records database is inapposite, *see* Pl's Opp. at 17 (quoting *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 178 (D.D.C. 2011)), because the Central Foreign Policy Records database has been incorporated into the eRecords Archive and has, therefore, already been searched.  2nd Weetman Decl. at ¶ 12.

Contrary to Plaintiff's assertion, the State Department did say what led it to believe that records concerning Plaintiff would be adequately searched for in the two central records systems: because Plaintiff submitted no other information, and because there was no information in the request suggesting any particular office, bureau, or consular office, a search of the central records system would be the most sensible.  1st Weetman Decl. ¶¶ 12-14, Mot. Summ. J. Ex. 1; 2nd Weetman Decl. at ¶ 8.

Finally, Plaintiff argues that the presence of a Russian website and, apparently, some sort of link between Interpol and the U.S. Probation Office, should have led the State Department to a more specific search location.  Pl's Opp. at 17-18.  But a review of Plaintiff's request to the State Department and subsequent appeal shows that he only requested information concerning his name, address, and phone number, and not the website "imgsrc.ru" or any other information concerning Russia or Interpol.  Compl. Ex. E, G; *see also* 2nd Weetman Decl. at ¶ 13.  Again: the agency is bound by the actual terms of Plaintiff's request, and "an agency processing a FOIA request is not required to divine a requester's intent." *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003); *see also id.* ("an agency need not conduct research in response to a FOIA request").

In the absence of any additional information which Plaintiff never provided to the agency,

"the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return." *Campbell v. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998); *see also Neese v. Dep't of Just.*, Civ. A. No. 19-1098 (CJN), 2022 WL 898827, at *3 (D.D.C. Mar. 28, 2022) (where a plaintiff "never identified particular locations that the agency should look, [the defendant agency] acted reasonably in deciding to confine its inquiry to [its] central filing system."); *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (FOIA does not require an agency to search every one of its records' systems). The State Department conducted an adequate search and should be granted summary judgment and dismissed from this case.

## VII. Discovery, *Vaughn* Index, and Summary Judgment Schedule

In addressing Plaintiff's motion for discovery, a *Vaughn* index, and an expedited summary judgment briefing schedule, Plaintiff's most recent brief introduces new arguments and factual assertions, and Defendants accordingly offer this short response.[4]

In response to Plaintiff's assertion that EOUSA is acting in bad faith by not producing 250 pages a month, EOUSA never stated it would do so. The June 2023 Status Report stated that EOUSA would *process*, not produce, at least 250 pages per month. Additionally, EOUSA has in fact made its next document release of September 8, 2023. *See* EOUSA Sept. 8, 2023 Letter, enclosed herein as Exhibit B to the Reply. Nothing in the record suggests that EOUSA is engaged in misconduct or is otherwise not taking the FOIA request seriously. *See Freedom Watch, Inc. v. Nat'l Sec. Agency*, 197 F. Supp. 3d 165, 176 (D.D.C. 2016) (the "mere allegation of agency misrepresentation or bad faith" is insufficient to warrant discovery) (quoting *Hayden v. Nat'l Sec.*

---

[4] If a party is "unable to contest matters presented to the court for the first time" in a final pleading, an opportunity to respond may be freely granted. *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003). Here, Plaintiff raises arguments concerning EOUSA's production schedule, for example, for the first time.

*Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).  And Plaintiff's allusions to the problems related to the health issues experienced by Defendants' counsel on this case are completely irrelevant.

## CONCLUSION

For the reasons stated in Defendants' motion and herein, this suit should be dismissed, or, alternatively, summary judgment should be entered in favor of Defendants.

Dated: September 21, 2023
Washington, D.C.

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ Michael David Wagner
     MICHAEL DAVID WAGNER
     Special Assistant United States Attorney
     601 D Street, NW
     Washington, D.C. 20530
     (202) 252-2435
     Michael.Wagner3@usdoj.gov

*Attorneys for the United States of America*