## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DENZIL E. MCKATHAN,

   *Plaintiff*,

 v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

   *Defendants.*

No. 22-cv-1865 (DLF)

## MEMORANDUM OPINION

   Denzil McKathan, proceeding *pro se*, brings this suit against the Department of Homeland Security ("DHS"), the State Department, the Executive Office of United States Attorneys ("EOUSA"), the Administrative Office of the United States Courts ("Administrative Office"), and the Department of Justice Criminal Division ("DOJ").  McKathan brings claims under the Freedom of Information Act ("FOIA"), the First Amendment, and the common law right of access.  All defendants now move to dismiss the First Amendment and common law right of access claims.  Dkt. 31.  DHS and the State Department also move for dismissal or, in the alternative, summary judgment on McKathan's FOIA claims.  *Id.*  McKathan separately moves for discovery, a Vaughn Index, and expedited summary-judgment briefing.  Dkt. 25.  For the reasons that follow, the Court will grant in part and deny in part the defendants' motions and deny McKathan's motions.

## I. BACKGROUND

### A. Collateral Proceedings

   In 2005, Denzil McKathan pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Order on Guilty Plea, *United States v. McKathan*, No. 05-cr-94

(S.D. Ala. May 18, 2005), Dkt. 14 ("*McKathan I*").  After completing a 27-month prison term, McKathan was placed on supervised release, the terms of which allowed his probation officer Rafael Goodwin, Jr. to search his residence and electronic devices.  *McKathan v. United States*, 969 F.3d 1213, 1218 (11th Cir. 2020) ("*McKathan IV*").  In September 2014, Goodwin discovered child pornography on McKathan's phone, leading to the revocation of his supervised release.  *Id.* at 1218–19.  Goodwin then provided the confiscated phone to DHS and copies of the pictures to the local U.S. Attorney's Office.  *Id.* at 1219.

In November 2014, McKathan was charged with three counts of knowingly receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and one count of knowingly possessing material containing an image of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Indictment at 1–2, *United States v. McKathan*, No. 14-cr-290 (S.D. Ala. 2014), Dkt. 1 ("*McKathan II*").  McKathan pleaded guilty to one count of knowingly receiving child pornography and was sentenced to 188 months' imprisonment.  *See McKathan IV*, 969 F.3d at 1220.

In November 2015, McKathan filed a 28 U.S.C. § 2255 motion in the Southern District of Alabama based on his conviction in *McKathan II*.  *See* Mot. to Vacate, *McKathan II*, Dkt. 51 ("*McKathan III*").  The district court denied the motion, Order, *McKathan II*, Dkt. 70, but the Eleventh Circuit reversed and remanded, *McKathan IV*, 969 F.3d at 1233.  On remand, the district court again denied McKathan's motion.  *See United States v. McKathan*, No. 15-cv-611, 2021 WL 707651 (S.D. Ala. Feb. 23, 2021) ("*McKathan V*").  McKathan then filed a motion under Rule 60(b) seeking relief from the denial of his § 2255 petition.  *McKathan v. United States*, No. 15-cv-611, 2022 WL 16961484 (S.D. Ala. Nov. 16, 2022) ("*McKathan VI*").  The district court denied the motion, *id.* at *9, and the Eleventh Circuit affirmed, *McKathan v. United States*, No. 22-14002, 2023 WL 6210908, at *4 (11th Cir. Sept. 25, 2023) ("*McKathan VII*").

### B.      Requests for Information

On March 9, 2022, while his Rule 60(b) motion was pending, McKathan mailed letters with requests for information to each of the defendants.  Defs.' Statement of Undisputed Material Facts ¶¶ 2, 3, Dkt. 31-4.  Each request generally sought information related to his conviction in *McKathan II*.  *See* Compl. exs. B, E, I, J, K, Dkt. 1-1.  McKathan claimed the right to the requested information under FOIA, the First Amendment, and the common law right of access.  *See id.*

From the Administrative Office, McKathan requested information relating to his "case file," communications between his Probation Officer Rafael Goodwin, Jr. and the U.S. District Court for the Southern District of Alabama, data compiled by Goodwin relating to McKathan's supervision, and "the unmasking of any U.S. person using the website imgsrc.ru."  Compl. ex. K. The request covered a 15-year period, from January 1, 2007 to January 1, 2022.  *Id.*  The Administrative Office received the letter but did not respond.  Am. Answer ¶¶ 30, 31, Dkt. 21.

From the State Department, McKathan requested "any and all records of any kind," "located in any location," that mention his name, his address, or his phone number from the period of January 1, 2012 to October 1, 2014.  Compl. ex. E.  On March 24, 2022, the State Department denied the request for failure to "reasonably describe" the records sought.  *Id.* ex. F.  McKathan filed an administrative appeal, and an appeals officer affirmed the denial on April 20, 2022.  *Id.* exs. G, H.  Since then, McKathan has not revised his request or otherwise provided clarifying information to the State Department.  Second Weetman Decl. ¶ 9, Dkt. 31-6.  After this Court denied the State Department's first Motion to Dismiss, *see* Min. Order of Mar. 8, 2023, the State Department searched for responsive records on its electronic records database ("eRecords Archive") and Retired Records Inventory Management System ("RIMS"), *see* Second Weetman Decl. ¶¶ 12–18.

From DHS, McKathan similarly requested "[a]ny and all records of any kind" "located in any location," that mention his name, address, phone number, the investigation number listed in a seizure custody receipt, or subscriber or identifying information about U.S.-based users of "imgsrc.ru," from January 1, 2012 to March 1, 2022.  Compl. ex. B.  On May 25 and June 21, 2022, DHS notified McKathan that it could not conduct a search because his request did not reasonably describe the records sought.  Second Pavlik-Keenan Decl. ¶¶ 16, 18, Dkt. 31-7.  DHS informed McKathan that his request had not yet been denied, provided instructions for perfecting the request, and cautioned that his case would be "administratively closed" if he did not respond within thirty days.  Second Pavlik-Keenan Decl. attachs. B, D.  Since then, McKathan has not responded, appealed, or otherwise perfected his request.  *See* Second Pavlik-Keenan Decl. ¶ 19.

From DOJ, McKathan requested "[a]ny and all records of any kind" "located in any location" that mention his name, address, or phone number.  Compl. ex. J.  After an exchange of several letters clarifying McKathan's request, the DOJ proceeded to conduct a search for records, which is now ongoing.  *See* Defs.' Partial Mot. to Dismiss & for Summ. J. at 10, Dkt. 31.

From EOUSA, McKathan requested "any and all records of any kind" "located in any location" that mentions his name, address, phone number, "investigative case number," subscriber or identifying information of U.S.-based users of "imgsrc.ru.," or a "grand jury transcript of the testimony of Christopher Anderson, a Homeland Security agent."  Compl. ex. I.  EOUSA has identified approximately 2,900 pages of potentially responsive documents, and the processing and production of these records is ongoing.  *See* Defs.' Partial Mot. to Dismiss & for Summ. J. at 11.

## II.   LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, it must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When a federal agency moves for summary judgment in a FOIA case, "the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA." *Ctr. for Investigative Reporting v. U.S. Dep't of Interior*, 613 F. Supp. 3d 327, 332 (D.D.C. 2020).  The agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

III.    ANALYSIS

The Court will grant in part and deny in part the defendants' motions.  Specifically, the Court will dismiss all common law right of access and First Amendment claims and grant summary judgment for the defendants on McKathan's FOIA claims against DHS and the State Department. The Court further denies McKathan's motions for limited discovery, a Vaughn Index, and an expedited summary judgment briefing schedule.

A.      **Common Law Right of Access, First Amendment**

The Court will dismiss McKathan's common law right of access and First Amendment claims against all defendants.

1.    *Administrative Office*

The Court will dismiss McKathan's claims against the Administrative Office.  As an initial matter, "the Federal Government and its agencies" are immune from suit absent a waiver of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  "[O]ne way or another, a waiver of sovereign immunity must be unmistakably clear in the language of [a] statute." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 466 (2024) (cleaned up).  The Court is unaware of, nor does McKathan point to, a statute waiving any immunity enjoyed by the Administrative Office when it comes to the disclosure of records.[1] *See Liu v. Admin. Off. of the*

---

[1] Although neither party raises the issue, the Court acknowledges that the Administrative Office is "within the Judicial Branch," so there may be some question whether it enjoys *sovereign* immunity or *judicial* immunity. *Guffey v. Mauskopf*, 45 F.4th 442, 444 (D.C. Cir. 2022); *cf. Jefferson v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 43, 46 n.3 (D.D.C. 2009) ("Sovereign immunity extends to executive branch functions, while legislative immunity and judicial immunity extend to the actors in the coordinate branches of government. Given that the USPO is a unit of the Administrative Office of the United States Courts and a part of the judicial branch of government, it is not clear that sovereign immunity extends to the USPO.").  But this is of no moment because, like sovereign immunity, "common-law principles of . . . judicial immunity . . . should not be abrogated absent clear legislative intent do so." *Pulliam v. Allen*,

*U.S. Courts*, No. 21-cv-494, 2022 WL 1184564, at *2 (D.D.C. Apr. 21, 2022) ("[T]he Administrative Office of the U.S. Courts remains immune from suit." (cleaned up)).  Although the Administrative Office's regulations permit "the production or disclosure of official information or records by the federal judiciary," the regulations "do not apply to . . . [l]egal proceedings in which the federal judiciary or a court of office of the federal judiciary is a party."  *See* 20 Administrative Office, *Guide to Judiciary Policy* §§ 810.10(a), 810.40(b)(1), https://www.uscourts.gov/sites/default/files/vol20-ch08.pdf   [https://perma.cc/XQ9K-ZFY4]. Here, the Administrative Office is a party, so the regulations have no force.  Even assuming the regulations applied, McKathan has not complied with their requirements nor reckoned with the express disclaimer of any waiver of immunity.  *See id.* §§ 820(d). 830(a) ("These regulations are not intended to, and do not . . . waive the sovereign immunity of the United States.").

Even if immunity was no bar, McKathan has nevertheless failed to state a claim against the Administrative Office.  He points to no authority requiring the Administrative Office to respond to his request for information, and neither the common law right of access nor the First Amendment supplies such a right.

As to the common law right of access, the Supreme Court has long recognized a general common law right "to inspect and copy . . . judicial records and documents."  *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978).  The D.C. Circuit applies a six-factor balancing test for district courts to consider when "presented with a motion to seal or unseal" parts of the judicial

---

466 U.S. 522, 529 (1984).  McKathan points to no evidence of abrogation, and he does not seek prospective injunctive relief against judicial officers.  And in any event, even if the Administrative Office enjoys no form of immunity, McKathan has nevertheless failed to state a claim against the Administrative Office for the reasons discussed *infra.*

record.  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665-66 (D.C. Cir. 2017).

As the D.C. Circuit has explained, such decisions are "best left to the sound discretion of the trial

court"—*i.e.*, the trial court overseeing a particular proceeding.  *United States v. Hubbard*, 650 F.2d

293, 316–17 (D.C. Cir. 1980).  Trial courts should exercise this discretion "in light of the relevant

facts and circumstances of the particular case."  *Id.* at 317.

McKathan seeks from the Administrative Office information related to *McKathan II*, but

the common law right of access does not provide a freestanding right to compel this Court to order

another court to release records.  Indeed, such a freestanding right would serve as an end run,

undermining a separate trial court's discretion over its own proceedings.  His claim seeking records

from a previous prosecution is more properly presented to the U.S. District Court for the Southern

District of Alabama, not this Court.

Further, McKathan's First Amendment claim fares no better.  "The First Amendment

guarantees a qualified right of public access to criminal proceedings and related court documents."

*In re Application of WP Co. LLC*, 201 F. Supp. 3d 109, 117 (D.D.C. 2016).  The "Supreme Court

has recognized a First Amendment right of access to criminal trials, *voir dire* proceedings, and

preliminary hearings, while the D.C. Circuit has extended such a right to completed—but not

unconsummated—plea agreements."  *Id.*  The First Amendment right of access thus opens

courthouse proceedings to public view.  It is not "a Freedom of Information Act nor an Official

Secrets Act," and it does not "mandate[] a right of access to government information."  *Houchins*

*v. KQED, Inc.*, 438 U.S. 1, 14-15 (1978) (plurality opinion).  Indeed, "[n]either the Supreme Court

nor [the D.C. Circuit] has applied" the right of access "outside the context of criminal judicial

proceedings or the transcripts of such proceedings."  *Ctr. for Nat'l Sec. Stud. v. DOJ*, 331 F.3d

918, 935 (D.C. Cir. 2003).  As the D.C. Circuit has made plain, "there are no federal court

precedents requiring, under the First Amendment, disclosure of information compiled during an Executive Branch investigation," which is precisely what McKathan seeks here from the Administrative Office.  *Id.*

Given McKathan's failure to identify a waiver of immunity and to state a claim, the Court will grant the defendants' motion to dismiss all claims against the Administrative Office.

### 2.    *DHS, State Department, EOUSA, DOJ*

The Court will dismiss McKathan's common-law and First Amendment claims against the remaining agency defendants.  First, as McKathan appears to concede, *see* Opp'n at 5, Dkt. 33, FOIA preempts his right-of-access claim.  Although the D.C. Circuit has recognized a common law right of access to "public records" from all three branches of government, *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 903–04 (D.C. Cir. 1996), FOIA preempts that right, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 937 ("It would make no sense for Congress to have enacted the balanced scheme of disclosure and exemption, and for the court to carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access.").  McKathan's common law right of access claims against the agency defendants subject to FOIA are thus preempted and will be dismissed.

Second, as discussed *supra*, McKathan's First Amendment claims fail.  The First Amendment right of access is narrow, and it merely ensures that "trials [are] presumptively open," as has been the case since the Founding.  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980).  But none of the remaining defendants are conducting proceedings against McKathan that could possibly jeopardize that right.  Nor does the First Amendment "mandate[] a right of access to government information," *Houchins*, 438 U.S. at 15 (cleaned up), or "information compiled during an Executive Branch investigation," *Ctr. for Nat'l Sec. Stud.*, 331 F.3d at 935.

Given the fundamental defects in McKathan's remaining common-law and First Amendment claims, the Court will dismiss those claims against the remaining defendants as well.

**B.    FOIA**

The Court construes the defendants' motion to dismiss, or in the alternative, motion for summary judgment as a motion for summary judgment.  The Court will grant DHS and the State Department summary judgment on McKathan's FOIA claims.[2]

1.    *DHS*

FOIA provides two requirements for a valid request: it must (i) "reasonably describe[]" the records sought, and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  In the D.C. Circuit, "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (cleaned up).  This "means that a requester under FOIA must file an administrative appeal" under an agency's FOIA regulations or otherwise "face dismissal of any lawsuit complaining about the agency's response." *Id.* (cleaned up).  A requester's failure to engage with an agency after a request for clarification amounts to a failure to exhaust. *See Dale*

---

[2] The Court will construe the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment as a motion for summary judgment.  Although "the D.C. Circuit has directed that the Court address [] exhaustion arguments under Federal Rule of Civil Procedure 12(b)(6)," *Acosta v. FBI*, 946 F. Supp. 2d 47, 49 (D.D.C. 2013), DHS's arguments about exhaustion reference materials outside the pleadings, *see* Defs.' Partial Mot. to Dismiss & for Summ. J. at 29; Opp'n at 15–16.  The same is true for the State Department's adequacy arguments. *See* Defs.' Partial Mot. to Dismiss & for Summ. J. at 31.  When "the defendant's motion references matters outside the pleadings, a court must treat the motion as one for summary judgment, not as one for dismissal based on failure to state a claim under Rule 12(b)(6)." *Pinson v. DOJ*, 61 F. Supp. 3d 164, 172 (D.D.C. 2015); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  For this reason, the Court must treat the defendants' motion as a motion for summary judgment.  In any case, "the result would be identical" under either standard. *Acosta*, 946 F. Supp. 2d at 50.

*v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) ("An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies."); *see, e.g.*, *Tooley v. Bush*, No. 06-cv-306, 2006 WL 3783142, at *17 (D.D.C. Dec. 21, 2006) ("Plaintiff has not provided DHS with the additional information requested and has thus failed to exhaust his administrative remedies." (cleaned up)), *rev'd on other grounds*, *Tooley v. Napolitano*, 556 F.3d 836, 838 (D.C. Cir. 2009) (noting "Tooley does not challenge" the grant of summary judgment on his FOIA claim).

Per DHS regulations, requesters must "describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort." 6 C.F.R. § 5.3(b). If a request fails to meet this threshold, "DHS may at its discretion either administratively close the request or seek additional information from the requester." *Id.* § 5.3(c). Requesters have 30 days to respond to DHS's invitation for clarification, or "the request may be administratively closed at the DHS's discretion." *Id.*

McKathan did not utilize, much less exhaust, DHS's administrative remedies. In its May 25 and June 21, 2022 letters, DHS informed McKathan that it could not conduct an adequate search because his request was too broad in scope, invited him to clarify his request, and noted that his case would be administratively closed if he did not respond within 30 days. *See* Pavlik-Keenan Decl. attachs. C, D. But McKathan failed to take any of those steps or otherwise engage with DHS. Second Pavlik-Keenan Decl. ¶¶ 19, 25. McKathan now asks this Court for a remedy that he did not seek from the agency. He thus failed to exhaust administrative remedies, dooming his FOIA claim against DHS.

McKathan argues that he had no opportunity to appeal because DHS's letters were not formal denials and that he was never informed about how to exhaust administrative remedies. *See*

Opp'n at 15–16.   True, DHS's May 25 and June 21, 2022 letters were not appealable denials, but that is because McKathan failed to exhaust administrative remedies first.   *See* Second Pavlik-Kennan Decl. attachs. C, D.   Indeed, both letters provided McKathan clear notice about how to perfect his FOIA request through means besides appealing.   *See, e.g.*, *id.* attach. D ("In addition to the information that you provided, this description should include, the type of record you are seeking, the DHS component you believe created and/or controls the records, the precipitating event that you believe warranted the creation of records and the time period that you believe the records or files were created and compiled.").   But McKathan simply refused to take such steps, denying DHS an "opportunity to reconsider its position and bring its expertise to bear."   *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1239 (D.C. Cir. 2019).   Given the uncontroverted evidence that McKathan failed to describe adequately the records sought, provide further clarification, or otherwise engage with DHS, the Court concludes that he failed to exhaust.   *See Keys v. DHS*, No. 08-cv-0726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009).   The Court will thus grant DHS's motion for summary judgment.

### 2.   *State Department*

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."   *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).   "The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.   The adequacy of the search, in turn, is judged by a standard of reasonableness and depends . . . upon the facts of each case.'"   *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).   When a requester "does not specify the locations

in which an agency should search, the agency has the discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return. . . . [T]he agency generally need not search every record system" *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (cleaned up).

The State Department's search was adequate.  McKathan requested "[a]ny and all records of any kind" "located in any location" mentioning his name, address, or phone number from the period of January 1, 2012 to October 1, 2014.  Compl. ex. E.  The State Department maintains that this information could be "contained in hundreds of databases and records systems located across its many bureaus and offices" as the agency's various components "maintain their records in varying ways." First Weetman Decl. ¶¶ 12–13, Dkt. 15-2.  In the absence of clarifying information from McKathan, the State Department confined its search to two of its central databases: the eRecords Archive and RIMS.  *See* Second Weetman Decl. ¶¶ 12–14.  The eRecords Archive is the State Department's "central repository for storing permanent electronic records transferred to the Bureau of Administration."  *Id.* ¶ 15.  The archive includes "all emails sent and received on the State.gov network since January 1, 2017, and retired records transferred to the Bureau of Administration in digital form, including . . . pre-2017 email records."  *Id.*  RIMS is a "searchable database that automates the processing of records retired to the Records Service Center."  *Id.* ¶ 16.

The State Department's search was adequate. McKathan did not specify the potential location of the records and declined to offer any information to help the State Department narrow its search.  It was thus an entirely reasonable exercise of its discretion for the State Department "to confine its inquiry to . . . central filing system[s]," including the eRecords Archive and RIMS. *Campbell*, 164 F.3d at 28. Further, given that the requested information could be located in "hundreds of databases . . . across its many bureaus and offices," First Weetman Decl. ¶ 13, the

State Department reasonably concluded that additional searches would be "unlikely to produce any marginal return," *Campbell*, 164 F.3d at 28.

McKathan argues that the State Department's search was not conducted in good faith because of alleged inconsistencies in affidavits submitted by Deputy Director of the Office of Information Programs and Services Susan Weetman.  *See* Opp'n at 16–18.  He points to her initial representation that McKathan's request "would require every bureau, office, and overseas post . . . to search for records," First Weetman Decl. ¶ 14, and her later representation that the State Department searched only the eRecords Archive and RIMS, Second Weetman Decl. ¶ 14.  Based on this, McKathan contends the agency must be lying about "the scope of the search that would be 'required.'"  Opp'n at 19.  The Court is not persuaded.  "The agency was bound to read [the request] as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and McKathan plainly requested records "located in any location," Compl. ex. E.  That the State Department limited his request to the eRecords Archive and RIMS does not contradict its earlier representation about the wide scope of McKathan's request.  *See Campbell*, 164 F.3d at 28.  Indeed, this fact suggests that the State Department tried its best to respond to his FOIA request despite its lack of specificity.  McKathan has thus failed to point to evidence of misrepresentation sufficient to overcome the "presumption of good faith." *See SafeCard Servs.*, 926 F.2d at 1200.

The State Department has met its burden of showing a "good faith effort" in conducting its search, using "methods which can reasonably be expected to produce the information requested." *Oglesby*, 920 F.2d at 69.  The Court will thus grant the State Department summary judgment.

### C.    Discovery, Vaughn Index, and Summary Judgment Schedule

McKathan moves for miscellaneous forms of relief, including limited discovery, a Vaughn Index, and expedited summary-judgment briefing. The Court will deny each of these motions.

First, limited discovery is unwarranted as McKathan has not shown bad faith by the defendants.  "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (cleaned up).  Generally, limited discovery is permitted "only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents." *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018).  Contrary to McKathan's assertions, *see* Opp'n at 19, and as discussed in Section III.B.2, *supra*, there is no material conflict in the Weetman affidavits.  Further, McKathan points to no evidence "rais[ing] a sufficient question as to the agenc[ies'] good faith" in processing his FOIA requests.  *Rochford*, 285 F. Supp. 3d at 76.  At most, he points to "numerous delays and extensions," Opp'n at 19, but "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith," *Citizens for Resp. & Ethics in Wash. v. DOJ*, 292 F. Supp. 3d 284, 288 (D.D.C. 2018) (cleaned up).  From the Court's perspective, DHS and the State Department have tried to cooperate with McKathan on multiple occasions, but he refused to play ball.  The Court will thus deny his motion for limited discovery.

Second, a Vaughn Index is premature at this stage.  In reviewing an agency's decision to withhold information under FOIA, a court may order that the agency "produce a detailed 'index' of the information withheld." *Pinson v. DOJ*, 975 F. Supp. 2d 20, 32 (D.D.C. 2013).  EOUSA and DOJ have not finished processing McKathan's FOIA requests and/or producing any responsive documents, *see* Defs.' Partial Mot. to Dismiss & for Summ. J. at 33–35, so there are no agency withholdings for the Court to review.  Accordingly, McKathan's motion for a Vaughn Index will be denied as premature.

15

Finally, an expedited Summary Judgment schedule is also premature.  "District courts enjoy broad discretion when deciding case management and scheduling matters."  *McGehee v. DOJ*, 362 F. Supp. 3d 14, 18 (D.D.C. 2019).  The Court will not set a summary judgment briefing schedule before EOUSA and DOJ have finished searching and releasing any documents to McKathan.  The Court will thus deny this motion too.

## CONCLUSION

For the foregoing reasons, the Court will dismiss McKathan's common law right of access and First Amendment claims against all defendants, grant summary judgment for DHS and the State Department on McKathan's FOIA claims, and deny McKathan's various motions for relief. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 29, 2024