UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENZIL E. MCKATHAN,

              Plaintiff,

      v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

           Defendants.

Civil Action No. 22-1865 (DLF)

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ........................................................................................... ii

Introduction ....................................................................................................... 1

Background ........................................................................................................ 2

    I.      The Criminal Division FOIA Request. ................................................. 3

    II.     The EOUSA Request ........................................................................... 4

Argument ........................................................................................................... 6

    I.      Plaintiff Failed to Exhaust Administrative Remedies With Respect to EOUSA .... 7

    II.     The Criminal Division and EOUSA Adequately Searched Using Methods Reasonably Calculated to Yield the Information Plaintiff Requested. ................... 9

          A.     The Criminal Division's Search Was Adequate. ...................................... 10

          B.     EOUSA's Search Was Adequate ............................................................ 11

    III.    EOUSA's Withholdings Pursuant to Exemptions 3, 5, 6, 7(C), 7(E), and 7(F) Were Proper. ........................................................................ 11

          A.     EOUSA Properly Withheld Pursuant to Exemption 3 Grand Jury Materials and a Sealed Court Order. ........................................................... 12

          B.     EOUSA Properly Withheld Pursuant to Exemption 5 Privileged Documents Prepared By or at the Direction of Federal Prosecutors During Plaintiff's Prosecution. ............................................................ 15

          C.     EOUSA Properly Withheld Pursuant to Exemption 6 and 7(C) Personal Information of a Grand Jury Witness and Government Officials Involved in the Investigation and Prosecution of Plaintiff. ....................................... 16

          D.     EOUSA Properly Withheld Pursuant to Exemption 7(E) Non-Public Law Enforcement Techniques. ........................................................ 19

          E.     EOUSA Properly Withheld Pursuant to Exemption 7(F) the Identities of Law Enforcement Officers Involved in the Transportation of Plaintiff While in Custody. ................................................................. 21

Conclusion ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 6

*Bagwell v. Dep't of Just.*,
588 F. Supp. 3d 58 (D.D.C. 2022) ............................................................................ 15, 16

*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) ................................................................................... 20, 21

*Bonner v. Soc. Sec. Admin.*,
574 F. Supp. 2d 136 (D.D.C. 2008) ............................................................................... 8

*Boyd v. Exec. Off. of U.S. Att'ys*,
161 F. Supp. 3d 1 (D.D.C. 2015) .................................................................................. 19

*Brayton v. Off. of the U.S. Trade Representative*,
641 F.3d 521 (D.C. Cir. 2011) ........................................................................................ 6

*Brown v. Exec. Off. for U.S. Atty's*,
Civ. A. No. 19-2303 (CKK), 2021 WL 3472382 (D.D.C. Aug. 5, 2021) ...................... 15

*Buzzfeed, Inc. v. Dep't of Homeland Sec.*,
Civ. A. No. 19-3062 (DLF), 2023 WL 5133158 (D.D.C. Aug. 10, 2023) ..................... 19

*Comm. for Freedom of Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ........................................................................................ 12

*Comm. for Freedom of Press v. FBI*,
877 F.3d 399 (D.C. Cir. 2017) ........................................................................................ 9

*Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*,
554 F.3d 1046 (D.C. Cir. 2009) .................................................................................... 17

*Corley v. Dep't of Just.*,
998 F.3d 981 (D.C. Cir. 2021) ...................................................................................... 12

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just*,
746 F.3d 1082 (D.C. Cir. 2014) .................................................................................... 11

*Dalal v. Dep't of Just.*,
643 F. Supp. 3d 33 (D.D.C. 2022) ............................................................................ 13, 16

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ........................................................................... 6

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ...................................................................... 17, 18

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ........................................................................ 17

*Dettmann v. Dep't of Just.*,
802 F.2d 1472 (D.C. Cir. 1986) ......................................................... 7

*Ecological Rts. Found. v. EPA*,
541 F. Supp. 3d 34 (D.D.C. 2021) .................................................. 19

*EPIC v. IRS*,
910 F.3d 1232 (D.C. Cir. 2018) ......................................................... 7

*FBI v. Abramson*,
456 U.S. 615 (1982) ........................................................................... 6

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) ....................................................................... 6, 7

*Ford v. Dep't of Just.*,
208 F. Supp. 3d 237 (D.D.C. 2016) ................................................ 13

*Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*,
889 F.2d 1118 (D.C. Cir. 1989) ...................................................... 15

*Garcia v. Exec. Off. for U.S. Atty's*,
302 F. Supp. 3d 79 (D.D.C. 2018) .................................................. 21

*\*Heritage Found. v. Dep't of Just.*,
719 F. Supp. 3d 95 (D.D.C. 2024) ................................................ 7, 8

*Hidalgo v. FBI*,
344 F.3d 1256 (D.C. Cir. 2003) ......................................................... 8

*Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) ........................................................... 9

*Jud. Watch, Inc. v. Dep't of Just.*,
813 F.3d 380 (D.C. Cir. 2016) ........................................................ 14

*Lepelletier v. FDIC*,
164 F.3d 37 (D.C. Cir. 1999) ................................................................ 17

*Lopez v. Dep't of Just.*,
393 F.3d 1345 (D.C. Cir. 2005) ............................................................. 13

*Lopez v. Nat'l Archives & Records Admin.*,
301 F. Supp. 3d 78 (D.D.C. 2018) .......................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................... 6

*Montgomery v. IRS*,
40 F.4th 702 (D.C. Cir. 2022) ................................................................. 9

*Morgan v. Dep't of Just.*,
923 F.2d 195 (D.C. Cir. 1991) ............................................................... 14

*Multi Ag Media LLC v. Dep't of Agric.*,
515 F.3d 1224 (D.C. Cir. 2008) ....................................................... 16, 17

*Murphy v. Exec. Off. for U.S. Att'ys*,
789 F.3d 204 (D.C. Cir. 2015) ............................................................... 13

*Nat'l Ass'n of Home Bldgs v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) ................................................................ 17

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
879 F.2d 873 (D.C. Cir. 1989) ............................................................... 17

*Nat'l Sec. Couns. v. CIA*,
931 F. Supp. 2d 77 (D.D.C. 2013) ........................................................... 8

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ............................................................... 7, 9

*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*,
740 F.3d 195 (D.C. Cir. 2014) ............................................................... 21

*Roth v. Dep't of Just.*,
642 F.3d 1161 (D.C. Cir. 2011) ........................................................ 17, 19

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) ............................................. 10, 16, 18, 19

*Schrecker v. Dep't of Just.*,
   349 F.3d 657 (D.C. Cir. 2003) ........................................................................ 18, 19

*Smith v. CIA*,
   246 F. Supp. 3d 117 (D.D.C. 2017) ................................................................. 16

*Toensing v. Dep't of Just.*,
   890 F. Supp. 2d 121 (D.D.C. 2012) ................................................................. 7

*Watkins L. & Advocacy, PLLC v. Dep't of Just.*,
   78 F.4th 436 (D.C. Cir. 2023) ........................................................... 9, 10, 11

*West v. Jackson*,
   448 F.Supp.2d 207 (D.D.C. 2006) ................................................................. 8

*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir. 2004) ........................................................................ 8

**Statutes**

5 U.S.C. § 552(a)(3) ........................................................................................ 6, 11

5 U.S.C. § 552(b) .................................................................. 6, 12, 14, 16, 17, 19, 20

18 U.S.C. § 2252A(a)(5)(B) ........................................................................... 2

**Rules**

Fed. R. Civ. P. 56 .......................................................................................... 6

Fed. R. Crim. P. 6 ...................................................................................... 12, 13

Defendants the Criminal Division of the Department of Justice (the "Criminal Division") and the Executive Office of the United States Attorneys ("EOUSA," collectively "Defendants") respectfully move this Court for summary judgment in this Freedom of Information Act ("FOIA") case under Federal Rule of Civil Procedure ("Rule") 56.

## INTRODUCTION

Pro se Plaintiff Denzil McKathan ("Plaintiff") is serving a sentence for knowingly receiving child pornography. He submitted FOIA requests to Defendants seeking records from his prosecution. Defendants each timely responded to his requests, asking for additional information that would permit them to accurately and efficiently search for the records he seeks. Rather than engage in the administrative process with EOUSA, Plaintiff filed the instant case, thus failing to exhaust administrative remedies with respect to his EOUSA request. EOUSA is, thus, entitled to summary judgment for this threshold reason.

Defendants are also entitled to summary judgment because their respective searches for records were reasonably calculated to identify responsive records. The Criminal Division's search did not identify any responsive records, which is unsurprising given that it was not involved in Plaintiff's criminal prosecution. The United States Attorney's Office for the Southern District of Alabama handled Plaintiff's prosecution and it searched its files in response to Plaintiff's FOIA request to EOUSA. That search identified approximately 3,275 pages of potentially responsive records. EOUSA reviewed the records and released to Plaintiff all responsive, non-exempt, segregable information. EOUSA withheld from release records pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(E), and 7(F). As explained below and in the attached declaration and *Vaughn* index, the withholdings were proper. Defendants respectfully request that the Court grant this motion and enter summary judgment for Defendants.

## BACKGROUND

The Court is familiar with the background of this case.  Mem. Op. at 1-2, ECF No. 39.  "In 2005, Denzil McKathan pleaded guilty [in the United States District Court for the Southern District of Alabama] to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B)."  *Id.* at 1.  He is currently serving a 188-month sentence for knowingly receiving child pornography, a sentence he received for criminal conduct while on supervised release for his initial incarceration.  *Id.* at 2.  In November 2015, he initiated section 2255 proceedings based on his second conviction.  *Id.*

While those proceedings were ongoing, McKathan submitted FOIA requests to the Criminal Division and EOUSA, as well as to the Department of Homeland Security, the State Department, and the Administrative Office of the United States Courts.  *See generally* Compl. ECF No. 1.  He asserted three claims: (1) FOIA as to the Criminal Division and EOUSA, as well as the Department of Homeland Security and the Department of State, *id.* ¶¶ 37-44; (2) First Amendment right to access as to all defendants, *id.* ¶¶ 45-48; and (3) common law right of access against all defendants, *id.* ¶¶ 49-51.  On March 29, 2024, this Court dismissed all claims and defendants, except the FOIA claims against the Criminal Division and EOUSA.  Mem. Op. at 6, 10, ECF No. 39.  The Criminal Division and EOUSA now move for summary judgment on the remaining FOIA claims.

The two remaining FOIA requests are: (1) FOIA request No. CRM-301707366 addressed to the Criminal Division, and (2) FOIA request No. EOUSA-2022-001505 addressed to EOUSA.  Ex. 1, Statement of Undisputed Material Facts ("Defs. Stmt.") ¶¶ 1-4, 19-23.  The processing of each request is described below.

## I.    <u>The Criminal Division FOIA Request.</u>

The Department of Justice's Criminal Division FOIA and Privacy Act Unit ("FOIA Unit")

received from Plaintiff a request seeking, from January 1, 2012, to January 1, 2022:

> Any and all records of any kind (including, without limitation, any: note,
> memorandum, report, letter, transcript, email chain, text message, or any other
> electronic communication or series of communications) located in any location,
> that mentions any of the following:
>
> a.      an individual Denzil McKathan (or McCathan)
>
> b.      the address "14570 Cat Deakle"
>
> c.      the phone number "251-259 6324"

*Id.* ¶¶ 1-2.

The FOIA Unit on behalf of the Criminal Division initially responded by letter dated

May 4, 2022, acknowledging the FOIA request and advising Plaintiff that he failed to provide

sufficient details to enable the FOIA Unit to conduct a reasonable search.  *Id.* ¶¶ 3-7.  The letter

notified Plaintiff that the FOIA Unit would administratively close the FOIA request if Plaintiff

failed to provide the requested information.  *Id.* ¶ 8.  Plaintiff timely replied to the letter but did

not provide sufficient detail clarifying the request.  *Id.* ¶¶ 9-10.  As a result, the FOIA Unit

issued a final response to the FOIA request on September 20, 2022, notifying Plaintiff that it

administratively closed the FOIA request because it did not constitute a proper FOIA request.

*Id.* ¶ 11.  Plaintiff did not administratively appeal that determination.

The FOIA Unit learned of Plaintiff's child pornography conviction during the course of

this litigation, which enabled it to determine that the Child Exploitation and Obscenity Section

of the Criminal Division would be the office most likely to maintain responsive records.  *Id.* ¶

12.  The That section enforces federal criminal statutes pertaining to the exploitation of children

and obscenity, including certain child pornography prosecutions.  *Id.* ¶ 13.  The FOIA Unit

therefore tasked the Child Exploitation and Obscenity Section with searching its files for responsive records. *Id.* ¶¶ 14-16.

The Child Exploitation and Obscenity Section responded that a search of its electronic case management found no records concerning "Denzil McKathan" and "McCathan" and confirmed that they searched for the address and phone number included in the request. *Id.* ¶ 17-18. This was unsurprising because the Child Exploitation and Obscenity Section was not involved in McKathan's prosecution; rather, United States Attorney's Office for the Southern District of Alabama ("Alabama Office") handled the prosecution. *Id.* ¶ 18. Accordingly, by letter dated January 19, 2024, the FOIA Unit issued a final response determination that it located no records responsive to Plaintiff's FOIA request. Ex. 2, Declaration of Marjorie F. Cole ¶ 12.

## II.    **The EOUSA Request**

EOUSA received a two-part request seeking, from January 1, 2012, to January 1, 2022:

1.    Any and all records of any kind (including, without limitation, any: note, memorandum, report, letter, transcript, email chain, text message, or any other electronic communication or series of communications) located in any location, that mentions any of the following:

a.    the individual Denzil McKathan (or McCathan)

b.    the address "14570 Cat Deakle"

c.    the phone number "251-259-6324"

d.    the investigative case number shown in ex. A attached [sic] to this request

e.    the unmasking of U.S. based users of the website imgsrc.ru

f.    obtaining subscriber information of U.S. IP addresses associated with the website imgsrc.ru

2.    The grand jury transcript of the testimony of Christopher Anderson, a Homeland Security agent, who testified before a grand jury on November 20, 2014 in the southern distict [sic] of Alabama regarding Possession and reciept [sic] of child pornography.

Defs Stmt. ¶¶ 19-21.

EOUSA acknowledged receipt of the FOIA request on April 6, 2022, and assigned the request tracking ID EOUSA-2022-001505. *Id*. ¶ 23. Because the request sought records related to Plaintiff's criminal prosecution by the Alabama Office, EOUSA determined that that office would likely have responsive records and requested that the Alabama Office conduct a search. *Id*. ¶¶ 24-25. The Alabama Office's search of its files located 3,275 pages of potentially responsive records. *Id*. ¶¶ 26-30.

On May 12, 2022, EOUSA sent to Plaintiff a letter seeking an advance of $456.00 based on the estimated search time and volume of potentially responsive records. *Id*. ¶ 32. That letter clarified that while Plaintiff was entitled to some search time and copied pages free of charge, the Department's regulations permitted EOUSA to seek advance payment before continuing to process a FOIA request; thus, EOUSA asked Plaintiff to advance $456 before processing the request. Hale Ex. 3, Declaration of Patrice Parker Hale ("Hale Decl.") Ex. D, May 12, 2022, Letter. The letter also warned Plaintiff that his failure to timely respond by paying the requested fee or reformulating his FOIA request would result in EOUSA administratively closing the request. *Id*. On June 8, 2022, Plaintiff timely responded without paying the requested fee or meaningfully reformulating the FOIA request, and instead stated that litigation was imminent. Defs. Stmt. ¶¶ 34-35. EOUSA thereafter informed Plaintiff by letter dated July 14, 2022, that it closed the FOIA request due to non-payment of the requested fee or narrowing of the request. *Id*. ¶ 36. EOUSA also denied Plaintiff's fee waiver request. *Id*. ¶ 37. Plaintiff did not administratively appeal either decision. *Id*. ¶ 38.

After Plaintiff filed this action, EOUSA began processing Plaintiff's FOIA request. EOUSA determined that all records were compiled for law enforcement purposes because the records pertained to Plaintiff's criminal investigation and prosecution. *Id*. ¶ 39. EOUSA released

all responsive information, except the information exempt from release pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(E), and 7(F).  *Id.* ¶ 40.

## ARGUMENT

"[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment is appropriate if the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  While the party seeking summary judgment must demonstrate the absence of a genuine issue of material fact, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248. In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)..

Congress enacted the Freedom of Information Act to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny[.]"  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  The statute generally requires the government to "make the records promptly available to any person" who makes "any request for records[.]"  5 U.S.C. § 552(a)(3). While "the basic policy [is] disclosure, not secrecy[,]" Congress has recognized that "legitimate governmental and private interests could be harmed by release of certain types of information[.]" *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Thus, Congress vested the government with authority to withhold information falling within one of nine enumerated exemptions.  5 U.S.C. § 552(b). Courts "'have no license to give [statutory] exemption[s] anything but a fair reading.'"  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (citation omitted; alterations in original).

Accordingly, courts may neither "*expand* [a FOIA exemption] beyond what its terms permit," nor may they "arbitrarily *constrict* it either by adding limitations found nowhere in its terms." *Id.* (emphases in original). The Supreme Court therefore explicitly rejected the argument that "FOIA exemptions should be narrowly construed," reasoning that "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.'" *Id.* (citations omitted; alterations in original).

When a plaintiff challenges an agency's response to a FOIA request, the agency must show: (1) that it "conducted a search reasonably calculated to uncover all relevant documents," and (2) that "each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements." *Toensing v. Dep't of Just.*, 890 F. Supp. 2d 121, 131 (D.D.C. 2012) (cleaned up).

## I.      **Plaintiff Failed to Exhaust Administrative Remedies With Respect to EOUSA.**

"'The doctrine of administrative exhaustion applies to FOIA and limits the availability of judicial review.'" *Heritage Found. v. Dep't of Just.*, 719 F. Supp. 3d 95, 97 (D.D.C. 2024) (quoting *EPIC v. IRS*, 910 F.3d 1232, 1238 (D.C. Cir. 2018)). Importantly, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion[.]" *Oglesby v. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *accord Dettmann v. Dep't of Just.*, 802 F.2d 1472, 1476 (D.C. Cir. 1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases."). Exhaustion allows an agency the opportunity to apply its "expertise on the matter and to make a factual record to support its decision." *Oglesby*, 920 F.2d at 61. FOIA's "exhaustion requirement also allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Id.* Further, exhaustion "prevent[s] premature interference with agency processes."

*Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam).  Where an agency appropriately responds to a request, litigation can be avoided, thereby avoiding unnecessary burdens on the Court and parties.  In light of all these considerations, therefore, "[e]xhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Soc. Sec. Admin.* 574 F. Supp. 2d 136, 139 (D.D.C. 2008); *see also Hidalgo v. FBI*, 344 F.3d 1256, 58 (D.C. Cir. 2003).  In sum, "[f]ailure to exhaust administrative remedies is *not* a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 99-100 (D.D.C. 2013).

EOUSA responded to Plaintiff's FOIA request.  Specifically, following a search, EOUSA requested that Plaintiff pay a $456.00 advance to process Plaintiff's request or reformulate his FOIA request.  Defs. Stmt. ¶¶ 32-33.  "A proper FOIA request must 'reasonably describe' the records sought and must comply with the agency's published procedures, including the agency's schedule of fees.'" *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 88 (D.D.C. 2018) (quoting 5 U.S.C. § 552(a)(3)(A)).  "The failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust." *West v. Jackson*, 448 F. Supp. 2d 207, 211–12 (D.D.C. 2006).  While Plaintiff timely responded to the letter, he failed to pay the requested advance or sufficiently narrow his FOIA request.  Defs. Stmt. ¶¶ 34-35.  Nor did he appeal the assessment of fees or the denial of a fee waiver.  *Id.* ¶ 38.  Plaintiff instead rushed to this Court, depriving the agency of the opportunity to fully consider his requests and possibly avoid litigation. *See Heritage Found.*, 719 F. Spp. 3d at 98 ("one purpose of exhaustion is to deter requesters from

suing prematurely in order to give the agency and requester a chance to resolve or narrow their disputes without burdening federal courts"; dismissing FOIA suit that was filed one day early). Plaintiff therefore has failed to exhaust administrative remedies regarding his EOUSA requests, and EOUSA is entitled to summary judgment for this reason.

## II.    The Criminal Division and EOUSA Adequately Searched Using Methods Reasonably Calculated to Yield the Information Plaintiff Requested.

If the Court finds that Plaintiff failed to exhaust administrative remedies, the Court need not proceed further with regard to EOUSA.  But if the Court does not dismiss on that basis, in all events Defendants are entitled to summary judgment on the merits.

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  While the agency "may not limit its search to only one record system if there are others that are likely to turn up the information requested[,]" the agency "need not search every record system[.]"  *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022) (cleaned up).  "Rather, an agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."  *Watkins L. & Advocacy, PLLC v. Dep't of Just.*, 78 F.4th 436, 442-43 (D.C. Cir. 2023) (cleaned up).  Further, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search[.]"  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The agency will meet its burden "by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (cleaned up).  The Court affords

agency declarations "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up).

**A.    The Criminal Division's Search Was Adequate.**

The Criminal Division's "declaration[] describe[s] with particularity the files that were searched, the manner in which they were searched, and the results of the search and show[s] that the agency made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested[.]" *Watkins Law & Advocacy*, 78 F.4th at 444 (internal quotation marks and citations omitted).

Once the FOIA Unit received information that Plaintiff's conviction pertained to child pornography, it determined that the Child Exploitation and Obscenity Section was the office most likely to maintain records responsive to Plaintiff's request. *Id.* ¶¶ 12-14. That office was asked to conduct a search to identify any potentially responsive records and/or custodians (if an ITM search was needed) for records mentioning Denzil McKathan or McCathan, the address 14570 Cat Deakle, or the phone number 251-259-624. *Id.* ¶¶ 15-16. The Child Exploitation and Obscenity Section queried its electronic case management system, using the terms "Denzil McKathan" and "McCathan" and located no responsive records. *Id.* ¶ 17. The Child Exploitation and Obscenity Section also confirmed that it searched for the address and phone number included in the request and located no responsive records. *Id.* ¶ 17-18. This was unsurprising because that office was not involved in Plaintiff's prosecution; the Alabama Office handled the prosecution. *Id.* ¶ 19. Following the Child Exploitation and Obscenity Section's records search, the FOIA Unit confirmed that all locations likely to contain responsive materials were searched and no other offices, custodians, or locations within the Criminal Division were likely to maintain any

additional responsive records. *Id*. ¶ 18. The Criminal Division's search, therefore, was adequate to find documents responsive to Plaintiff's FOIA request. *See Watkins L.*, 78 F.4th at 444.

### B.    EOUSA's Search Was Adequate

EOUSA's declaration likewise "describe[s] with particularity the files that were searched, the manner in which they were searched, and the results of the search and show[s] that the agency made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested[.]" *Id*. Specifically, EOUSA determined that responsive records would most likely be located at the Alabama Office, the office that handled Plaintiff's prosecution. Defs. Stmt. ¶ 24. That office searched its files for responsive records: it searched Federal Records Center, CaseView, Case Management / Electronic Case Files for files labeled "CR#14-cr-290" and "CIV# 15-cv-611," office indexes, and digital files to include the emails of the Assistant United States Attorneys involved in Plaintiff's investigation and prosecution. *Id*. ¶ 26. The office also requested that all its personnel search their records for the search terms "Denzil McKathan," "14570 Cat Deakle," and "251-259-6324." *Id*. ¶ 27. In total, the search located of 3,275 pages of potentially responsive records. *Id*. ¶ 30. Importantly, EOUSA has no reason to believe that a search with any other search terms or any other locations would reveal records potentially responsive to Plaintiff's FOIA request. *Id*. ¶ 28.

### III.    EOUSA's Withholdings Pursuant to Exemptions 3, 5, 6, 7(C), 7(E), and 7(F) Were <u>Proper.</u>

"The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). A court "may rely on non-conclusory agency affidavits demonstrating the basis for withholding if they are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *Reps.*

*Comm. for Freedom of Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021). Here, EOUSA withheld

certain information pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(E), and 7(F).

Moreover, where EOUSA withheld information, it considered "whether [it] reasonably

foresees that disclosure would harm an interest protected by an [applicable] exemption." Hale

Decl. ¶ 53 (citing 5 U.S.C. § 552(a)(8)(A)). The foreseeable harm for specific categories of

documents is discussed in greater detail below. In evaluating the foreseeable harm, EOUSA also

considered the age of the records, the content of the information within the records, and what

information, if any, was already released to the public. *Id*. ¶ 55. EOUSA likewise considered

whether any portion of a record that is non-exempt can be reasonable segregable from the exempt

material. *Id*. ¶ 57. EOUSA's did so by reviewing each document line-by-line and records that

were withheld in their entirety contained no meaningful portions that could be released without

destroying the integrity of the document or record, or without identifying a third-party individual

or violating the prohibitions against disclosure of privileged material. *Id*. ¶ 59.

### A.    EOUSA Properly Withheld Pursuant to Exemption 3 Grand Jury Materials and a Sealed Court Order.

FOIA Exemption 3 permits an agency to withhold information that is:

specifically exempted from disclosure by statute . . . if that statute—

(A) (i) requires that the matters be withheld from the public in such a manner as to
leave no discretion on the issue; or (ii) establishes particular criteria for withholding
or refers to particular types of matters to be withheld; and

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted
Oct. 28, 2009], specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). "To withhold records under Exemption 3, an agency must make two

showings: that the statute is one of exemption as contemplated by Exemption 3, and that the

withheld material falls within the statute." *Corley v. Dep't of Just.*, 998 F.3d 981, 984-85 (D.C.

Cir. 2021). Here, EOUSA invoked Federal Rule of Criminal Procedure ("Criminal Rule") 6(e) to

withhold from release the identity of the grand jury foreman, staff of the United States Attorney's Office involved in the grand jury proceedings, and a Grand Jury witness, as well as the testimony of a grand jury witness. Hale Decl. Ex. G, Vaughn Index at 7, 11, 18, 20, 26, and 39. EOUSA also withheld from disclosure an arrest warrant sealed by court order. Defs. Stmt. ¶ 42.

          1.     <u>EOUSA Could Not Release the Grand Jury Materials Plaintiff Seeks.</u>

Criminal Rule 6(e) "bars disclosure of matters before a grand jury." *Dalal v. Dep't of Just.*, 643 F. Supp. 3d 33, 57 (D.D.C. 2022) (citing Fed. R. Crim. P. 6(e)(2)(B)). Criminal Rule 6(e) "is considered a statute for purposes of Exemption 3" and that "prohibits the disclosure of certain grand jury matters even in the face of a valid FOIA request." *Ford v. Dep't of Just.*, 208 F. Supp. 3d 237, 247–48 (D.D.C. 2016). While not a "per se rule," it protects information that "would 'tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" *Lopez v. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).

Plaintiff here seeks the "grand jury transcript" of a witness "who testified before a grand jury on November 20, 2024, in the Southern District of Alabama." Defs. Stmt. ¶ 21. That grand jury material is exempt from disclosure. *See Lopez*, 393 F.3d at 1349. EOUSA also withheld from disclosure discussions during the grand jury about the "the strategy or direction of the investigation," *id.*, as well as the identity of the grand jury foreperson because it "is plainly protected under exemption 3." *Murphy v. Exec. Off. for U.S. Att'ys*, 789 F.3d 204, 212–13 (D.C. Cir. 2015). As Hale explains, "[t]he testimony of a law enforcement official during a grand jury proceeding is information that would be used and/or considered by a grand jury during their deliberations." Hale Decl. ¶ 29. Plaintiff is not entitled to receive any information related to the

innerworkings of grand jury proceedings; so, EOUSA was justified in withholding the identities

of the grand jury foreman, and a grand jury witness (including that witness's testimony).

### 2.    A Court Order Prohibits EOUSA From Releasing an Arrest Warrant.

The government may not release a document subject to a sealing order where "'the seal,

like an injunction, prohibits the agency from disclosing the records.'"  *Jud. Watch, Inc. v. Dep't of

Just.*, 813 F.3d 380, 383 (D.C. Cir. 2016) (quoting *Morgan v. Dep't of Just.*, 923 F.2d 195, 198

(D.C. Cir. 1991)).  Here, EOUSA withheld pursuant to a court order Plaintiff's arrest warrant.

Hale Decl. ¶ 30.  That document is docket entry number 30 in Plaintiff's underlying criminal case,

*United States v. McKathan*, Crim. No. 05-0094 (S.D. Al.).  That document is a Petition for Warrant

or Summons for Offender Under Supervision and was marked sealed by the United States District

Court for the Southern District of Alabama on October 1, 2014.  *Id.*; *see also* Hale Decl. Ex. H,

Sealed Document (showing Pacer-generated heading and noting that the record is "SEALED").

While "the scope and effect of the seal" may be ambiguous "from the face of the seal,"

EOUSA obtained additional indicia showing that EOUSA lacks the authority to consider the

releasability of this record, and therefore, withheld it.  *See Morgan*, 923 F.2d at 198-99; Hale Decl.

¶ 31-32.  Specifically, the document remains unavailable on the docket even though Plaintiff's

criminal case is now closed.  Hale Decl. ¶ 31.  Hale also contacted the issuing district court; that

court's administrative assistant responded that the document is not released to the public and

remains sealed from release even pursuant to FOIA.  *Id.*  Moreover, a local standing order that

permits release of sealed information in limited circumstances to specific government offices

mandates that those offices "shall exercise caution to prevent unauthorized disclosure regarding

the sealed criminal case to any third party."  Hale Decl. Ex. I, Standing Order Relating to Sealed

Documents (S.D. Ala.).  In short, EOUSA properly determined that the arrest warrant remains

subject to a court seal and that EOUSA is not authorized to release the record pursuant to FOIA.

**B.**   **EOUSA Properly Withheld Pursuant to Exemption 5 Privileged Documents Prepared By or at the Direction of Federal Prosecutors During Plaintiff's Prosecution.**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   "Courts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989).   "The attorney work-product privilege aims 'to protect the integrity of the adversary trial process,' by providing lawyers 'a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories.'"   *Bagwell v. Dep't of Just.*, 588 F. Supp. 3d 58, 73 (D.D.C. 2022).

Here, EOUSA withheld pursuant to Exemption 5 records that reflect hearing preparation and strategy, legal interpretations, and personal evaluations and opinions by Assistant United States Attorneys pertinent to the investigation and prosecution of the Plaintiff's criminal case. Defs. Stmt. ¶ 43.   Specifically, EOUSA withheld emails containing the Assistant United States Attorneys' summaries, theories, and opinions concerning probation violation, handwritten notes on the presentence investigation report, and preparation and summary notes.   *See, e.g.*, Ex. 3, Hale Decl. Ex. G, *Vaughn* Index at 4, 5, 7, 8, 9, 16, 37.[1]   These emails are protected by the attorney-

---

[1]    One of the documents in EOUSA's possession is Plaintiff's presentence investigation report. Hale Decl. ¶ 50.   EOUSA did not include a physical copy of that document in its release because Bureau of Prisons policy prohibits inmates from obtaining or possessing photocopies of their presentence investigation report and the Bureau of Prisons routinely returns those documents to EOUSA when they are mailed to an inmate.   *Id.* ¶ 51; *see also Brown v. Exec. Off. for U.S. Atty's*, Civ. A. No. 19-2303 (CKK), 2021 WL 3472382, at *6, n.2 (D.D.C. Aug. 5, 2021)

client privilege, work product doctrine, and the deliberative process privilege because they were prepared by or at the request or direction of an attorney and in anticipation of or during litigation. Defs. Stmt. ¶ 43. They include deliberations of various components of the Department of Justice and other federal and state agencies in their consideration of possible investigation and prosecution of Plaintiff, *id*. ¶ 44, and, as such, were prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party." *SafeCard Servs.*, 926 F.2d at 1203. Courts in this district routinely find that withholding such information is proper under Exemption 5, and this Court should do the same in this instance. *See*, *e.g.*, *Dalal*, 643 F. Supp. 3d at 64–65; *Bagwell*, 588 F. Supp. 3d at 73–74.

### C. EOUSA Properly Withheld Pursuant to Exemption 6 and 7(C) Personal Information of a Grand Jury Witness and Government Officials Involved in the Investigation and Prosecution of Plaintiff.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). It "requires a court to 'pursue two lines of inquiry,' first determining whether the records at issue are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Smith v. CIA*, 246 F. Supp. 3d 117, 128 (D.D.C. 2017) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). "The Supreme Court has stated that the term 'similar files' is to be construed broadly, and includes any 'disclosure

---

(concluding that defendant disclosed all reasonably segregable non-exempt information even where "the non-party Bureau of Prisons returned [plaintiff's pre-sentence report] pursuant to its regulation prohibiting inmates from possessing such documents"). Plaintiff can access that document by making a request to his corrections officers in accordance with Bureau of Prisons policy. Hale Decl. ¶ 52.

of information which applies to a particular individual.'" *Id.* (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982)). If the threshold requirement of "personnel and medical files and similar files" is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). If the requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" and disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C), which requires the government to prove only that disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *Reps. Comm.*, 489 U.S. at 773).

In certain situations, Exemption 7(C) may be applied categorically. In *Reporters Committee*, the Supreme Court explained that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." 489 U.S. at 776. There, the plaintiff "sought disclosure of any arrests, indictments, acquittals, convictions, and sentences" of four individuals with organized-crime associations. *Id*. at 757. The Supreme Court held that "a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy" "as a categorical matter[.]" *Id.* at 780. The Supreme Court explained that the privacy interest is "at its apex" when the FOIA request seeks law enforcement information about a private citizen and the government controls the information "as a compilation, rather than as a record of 'what the Government is up to'" while "the public interest in disclosure is at its nadir." *Id*. The Privacy Act, which generally provides that "no agency shall disclose any record which is contained in a system of records except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" also supports the conclusion "that a strong privacy interest inheres in the nondisclosure." *Reps. Comm.*, 489 U.S. at 766 (cleaned up). The D.C. Circuit has, therefore, "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (compiling cases). Disclosure of such information is categorically prohibited, "unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Id*. (quoting *SafeCard Servs.*, 926 F.2d at 1206).

The at issue records Plaintiff seeks were "compiled for law enforcement purposes" because they were "created as part of the government's investigation and criminal prosecution" of Plaintiff.

*See Boyd v. Exec. Off. of U.S. Att'ys*, 161 F. Supp. 3d 1, 10 (D.D.C. 2015); Defs. Stmt. ¶ 40.  The

Court "ha[s] no need to consider Exemption 6 separately because all information that would fall

within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."

*Roth*, 642 F.3d at 1173.  Moreover, "when 'invoking Exemption 7(C), an agency need not establish

much more than the fact of disclosure to establish foreseeable harm' because 'disclosure of

identifying information is a harm in and of itself.'"  *Buzzfeed, Inc. v. Dep't of Homeland Sec.*, Civ.

A. No. 19-3062 (DLF), 2023 WL 5133158, at *3 n.1 (D.D.C. Aug. 10, 2023) (quoting *Ecological

Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 65 (D.D.C. 2021))

      EOUSA withheld pursuant to Exemption 6 and 7(C) the identities of a grand jury witness,

Department staff, other law enforcement personnel, and other third parties.  Defs. Stmt. ¶ 45; *see

also* Hake Decl. *Vaughn* Index.  Each of these categories is categorically exempt from disclosure.

*See SafeCard Servs.*, 926 F.2d at 1206; *Schrecker*, 349 F.3d at 661.  As Hale avers, the exemption

was "applied to protect the identities of federal government employees and local law enforcement

personnel all of whom participated in some aspect of the investigation and prosecution of the

Plaintiff in his criminal case."  Hale Decl. ¶ 43.  Duty assignments are not public information and

disclosure "could seriously impede law enforcement effectiveness in subsequent cases, even

subjecting these individuals to harassment or other harm, such as doxing or forgery."  *Id*.  EOUSA

made "every effort" to release all segregable information without invading the privacy interest of

the individuals in question.  *Id*. ¶ 44.  The withholdings were proper.

    **D.**    **EOUSA Properly Withheld Pursuant to Exemption 7(E) Non-Public Law
Enforcement Techniques.**

      Exemption 7(E) permits withholding of "records or information compiled for law

enforcement purposes" where the release of information would "disclose techniques and

procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). "[T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (cleaned up). "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Id.* (cleaned up).

EOUSA withheld pursuant to Exemption 7(E) information consisting of law enforcement techniques used to surveil Plaintiff's social media activities during the investigation. Defs. Stmt. ¶ 46. As the *Vaughn* index notes, this information appeared on two emails. Hale Decl. *Vaughn* Index at 28, 34. Disclosure of the withheld information would reveal law enforcement investigatory or prosecutorial techniques, including the specific type of social media surveillance used in the investigation, which in turn could enable determined criminals to predict how the government conducts social media surveillance and structure their behavior to avoid detection and disruption by law enforcement investigators. Hale Decl. ¶ 46. EOUSA also withheld pursuant to Exemption 7(E) the unique identifying numbers assigned to Plaintiff while he was being transported to and from court via the Justice Prisoner and Alien Transportation System operated by the United States Marshals. *Id.* Likewise, release of the unique numbers employed by the Marshals could enable determined criminals to decipher how numbers are assigned to certain classes of federal inmates during the transportation to and from hearings. *Id.* The release of this

information could enable these determined criminals to circumvent the law. *Id*. As such, the withholdings were proper.

### E. EOUSA Properly Withheld Pursuant to Exemption 7(F) the Identities of Law Enforcement Officers Involved in the Transportation of Plaintiff While in Custody.

Exemption 7(F) permits the withholding of any "records or information compiled for law enforcement purposes" if release of the information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(B)(7)(F). "The language in this exemption is very broad and has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester." *Garcia v. Exec. Off. for U.S. Atty's*, 302 F. Supp. 3d 79, 93 (D.D.C. 2018) (cleaned up). A "'reasonable expectation of endangerment suffices,'" *id*. (quoting *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014)), and "Courts generally defer to an agency's prediction of harm." *Id*.

EOUSA withheld pursuant to Exemption 7(F) the identities of law enforcement agents, their support staff, local enforcement personnel, and other third-party persons in connection with the coordination of the transportation of Plaintiff to attend court hearings. Hale ¶ 49. These employees are involved with the transportation of criminals who often are violent, as well as criminals associated with violent and organized gangs. Releasing these officer's personal information would potentially be of particular interest to criminals and could jeopardize the safety and security of the prisoner transportation system and the safety of the officers. *Id*. As a result, withholding of this information is necessary to protect the life and physical safety of U.S. Marshals Service employees, and is independently justified pursuant to Exemption 7(F), in addition to Exemptions 6 and 7(C).

**CONCLUSION**

For these reasons, Defendants respectfully request that the Court grant this motion and enter summary judgment in favor of Defendants.

Dated: December 15, 2024    Respectfully submitted,

            MATTHEW M. GRAVES, D.C. Bar #481052
            United States Attorney

            BRIAN P. HUDAK
            Chief, Civil Division


            By:     /s/ *Dimitar P. Georgiev*
              DIMITAR P. GEORGIEV, D.C. Bar #1735756
              Assistant United States Attorney
              601 D Street, NW
              Washington, DC 20530
              (202) 815-8654

            *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENZIL E. MCKATHAN,

        Plaintiff,

    v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Defendants.

Civil Action No. 22-1865 (DLF)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ODERED that summary judgment is ENTERED in favor of Defendants.


SO ORDERED:


_____                    _____
Date                                      DABNEY L. FRIEDRICH
United States District Judge

## CERTIFICATE OF SERVICE

I certify that on this 15th day of December 2024, I caused the foregoing motion and accompanying exhibits to be served on Plaintiff via First Class Mail, postage pre-paid, at the following address:

DENZIL E. MCKATHAN
FED. REG. NO. 09015-003
FCI YAZOO CITY LOW
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 5000
YAZOO CITY, MS  39194


_____/s/ *Dimitar P. Georgiev*_____
DIMITAR P. GEORGIEV
Assistant United States Attorney