UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENZIL E. MCKATHAN,

    *Plaintiff*,

    v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

    *Defendants.*

No. 22-cv-1865 (DLF)

**MEMORANDUM OPINION**

Denzil McKathan, proceeding *pro se*, brings this Freedom of Information Act (FOIA) action, *see* 5 U.S.C. § 552, against the Executive Office of United States Attorneys (EOUSA) and the Criminal Division of the U.S. Department of Justice (Criminal Division) to obtain records concerning his prosecution for child pornography. Compl., Dkt. 1. Before the Court is the defendants' Motion for Summary Judgment, Dkt. 49, and McKathan's Cross-Motion for Summary Judgment, Dkt. 51. For the following reasons, the Court will grant the defendants' motion and deny McKathan's cross-motion.

**I.   BACKGROUND**

The Court previously described this case's background, *see McKathan v. U.S. Dep't of Homeland Sec.*, No. 22-cv-1865, 2024 WL 1344434 (D.D.C. Mar. 29, 2024), and recounts here only those facts relevant to its decision.

On March 9, 2022, McKathan mailed requests for information to the EOUSA and the Criminal Division. *See* Crim. Div. Req., Dkt. 49-2, Ex. A; EOUSA Req., Dkt. 49-3, Ex. A.

From the Criminal Division, McKathan requested "[a]ny and all records of any kind," "located in any location" that mentioned his name, address, or phone number. Crim. Div. Req. at 1. The Criminal Division responded to this request on May 4, 2022. Crim. Div. Resp. at 1, Dkt. 49-2, Ex. B. Citing department regulations, the agency requested verification of McKathan's identity as well as "additional information about a specific investigation or prosecution" that would "enable Criminal Division personnel to locate the records with a reasonable amount of effort." *Id.* The Criminal Division also stated that the case would be closed administratively if McKathan failed to reply within thirty days but that the letter was not a denial of his request. *Id.* at 1–2.

McKathan responded to the Criminal Division on May 12, 2022. McKathan Ltr. to Crim. Div. at 1, Dkt. 49-2, Ex. C. His letter described the Criminal Division's verification request as "ridiculous." *Id.* He said that the Criminal Division's response had made "material false representations" with respect to the regulations cited and accused the agency of "feigned inability to respond to [his] 9 March request." *Id.* McKathan concluded his response by saying that the Criminal Division "will accordingly be named as a defendant." *Id.*

The Criminal Division replied to McKathan on September 20, 2022. Crim. Div. Reply at 1, Dkt. 49-2, Ex. D. In its reply, the Criminal Division informed McKathan that the agency would close his request file, citing McKathan's failure to "provide sufficient detail to enable personnel to locate the records with a reasonable amount of effort within the Criminal Division." *Id.* The reply included the contact of the Criminal Division's FOIA Public Liaison and notified McKathan of his right to "administratively appeal by writing to the Director [of the] Office of Information Policy." *Id.*

Despite its initial determination that the request was improper, the Criminal Division discretionarily accepted McKathan's request and conducted a search. Cole Decl. ¶ 19, Dkt. 49-2.

Upon receiving information that McKathan's conviction pertained to child pornography, the Criminal Division's FOIA Unit determined that the Child Exploitation and Obscenity Section (Obscenity Section) was the office most likely to maintain records responsive to McKathan's request. *Id.* ¶ 20. The FOIA Unit then asked the Obscenity Section to conduct a search to identify any potentially responsive records mentioning Denzil McKathan or McCathan, his address, or his phone number. *Id.* ¶ 21. The Obscenity Section conducted searches in its electronic case management system for "Denzil McKathan," "McCathan," the address, and the phone number, none of which yielded responsive records. *Id.* ¶ 22. Moreover, neither the Criminal Division nor the Obscenity Section were previously involved in the U.S. Attorney's Office for the Southern District of Alabama's prosecution of McKathan. *Id.* ¶ 23; *see* Defs.' Mot. at 4, Dkt. 49.

On January 19, 2024, the Criminal Division informed McKathan that, after a search of the most relevant section, "no responsive records subject to the FOIA [request] were located." Crim. Div. Sur-Reply at 1, Dkt. 49-2, Ex. E. The letter also advised McKathan to contact the U.S. Attorney's Office for any further assistance. *Id.*

On March 9, 2022, McKathan requested from the EOUSA a "grand jury transcript of the testimony of Christopher Anderson, a Homeland Security agent," and "[a]ny and all records of any kind," "located in any location" that mentioned his name, address, phone number, "investigative case number," or subscriber or identifying information of U.S.-based users of "imgsrc.ru." EOUSA Req. at 1. In addition to the request for information, McKathan included a request for a "waiver or reduction of fees," citing the "'representative of the news media' and 'public interest' provisions of the law and federal regulations." *Id.* at 3.

The EOUSA responded by letter on April 6, 2022. EOUSA Ltr. at 1, Dkt. 49-3, Ex. B. First, the EOUSA stated that McKathan's request was considered "complex" because it would

3

"require a search in one or more field offices and potentially involves voluminous records and/or requires consultation with another agency." *Id.*  Second, the response mentioned that McKathan "may be required to pay certain costs associated with processing [his] request." *Id.*  As to the fee waiver, the EOUSA mentioned it "ha[d] not yet made a decision on [McKathan's] request" and would "do so after [it] determine[d] whether the processing of [his] request [would] result in any assessable fees." *Id.* at 2.  Finally, the response mentioned that the EOUSA was able to respond to "requests that are . . . of limited scope" more quickly and possibly with lower fees and asked McKathan to "modify and narrow the scope of [his] request." *Id.*

McKathan sent a form dated April 12, 2022, that narrowed the request by excluding the portions relating to the imgsrc.ru website.  Revised EOUSA Req. at 1, Dkt. 49-3, Ex. C; *see* EOUSA Req. at 1.

By letter dated May 12, 2022, the EOUSA informed McKathan that it had identified 3,275 pages of responsive records.  EOUSA Resp. at 1, Dkt. 49-3, Ex. D.  The letter stated that, pursuant to Department of Justice regulations, the office was authorized to collect "advance payment" before continuing to process McKathan's request if the estimated fees would exceed $250.  *Id.* The letter then indicated that, because the office had already spent nine and a half hours on his request, McKathan would have to pay $456 before the EOUSA could continue.  *Id.* at 1–2.  The letter also mentioned that McKathan could reduce fees by "reformulat[ing his] request." *Id.* at 2.  Finally, McKathan was informed that he could contact the FOIA Public Liaison to discuss "any aspect of [his] request." *Id*.  The letter did not contain information about the right to administratively appeal the fee determination.  *See id.*

McKathan responded to the request for an advanced payment on May 18, 2022.  McKathan Ltr. to EOUSA at 1, Dkt. 49-3, Ex. E.  He stated that "litigation against" the EOUSA was

4

"imminent" and advised the agency to "preserve all evidence related to [its] handling of this matter." *Id.* at 1.  McKathan also claimed that the EOUSA was not entitled to collect an advanced payment and maintained that the EOUSA had "forfeited its ability to require payment" by failing to object to his fee waiver request.  *Id.*  McKathan concluded his letter by stating that the EOUSA "will be named as a defendant." *Id.*

The EOUSA's final letter to McKathan was dated July 14, 2022—shortly after McKathan had filed suit.  *See* EOUSA Closure Ltr. at 1, Dkt. 49-3, Ex. F.  The EOUSA informed McKathan that it was closing his request file because it "did not receive the advance payment or any narrowing of [his] request."  *Id.*  The letter concluded by stating that McKathan could "administratively appeal by writing to" the Director of the Office of Information Policy.  *Id.*

McKathan filed suit on June 27, 2022.  *See* Compl. at 1., Dkt. 1.  The Court granted summary judgment for the defendants as to McKathan's FOIA claims against the Department of Homeland Security and the State Department on March 29, 2024.  *See McKathan*, 2024 WL 1344434, at *3.  On December 15, 2024, the Criminal Division and the EOUSA—the only remaining defendants—moved for summary judgment, arguing that McKathan failed to exhaust administrative remedies as to his EOUSA request, *see* Defs.' Mot. at 7–9; that the Criminal Division's and the EOUSA's searches were adequate, *id.* at 10–11; and that the EOUSA's withholdings were proper, *id.* at 11–21.  McKathan cross-moved for summary judgment, arguing that the EOUSA's failure to make a determination regarding his request or inform him of his right to appeal meant that his duty to exhaust was never triggered.  Pl.'s Cross-Mot. & Opp'n at 14–15, Dkt. 51.

## II.  LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).  To warrant summary judgment in a FOIA action, a federal agency must demonstrate that it "conduct[ed] a search reasonably calculated to uncover all relevant documents," *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (citation modified), and that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements," *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973).

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam).  Agency affidavits are accorded a presumption of good faith, *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (citation modified).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

**III.   ANALYSIS**

For the reasons that follow, the Court will hold that (1) McKathan's failure to exhaust the EOUSA's administrative process bars his claim for judicial review and (2) the Criminal Division's search was adequate.

**A.   EOUSA Request**

Exhaustion of administrative remedies "is required . . . before a party can seek judicial review" of an agency's compliance with a FOIA request. *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985). This exhaustion requirement "allows the top managers of an agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial review." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). "Failure to exhaust administrative remedies is *not* a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process." *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 99–100 (D.D.C. 2013). As such, "[e]xhaustion of administrative remedies in a FOIA case is treated as an element of a FOIA claim, which, as with all elements of any claim, must be proved by the plaintiff in order to prevail." *Bonner v. Soc. Sec'y Admin.*, 574 F. Supp. 2d 136, 139 (D.D.C. 2008).

"Under the FOIA, there are two ways for a requester to exhaust administrative remedies: actual exhaustion and constructive exhaustion." *Nat'l Sec. Couns.*, 931 F. Supp. 2d at 95. "Actual exhaustion is required when an agency responds to a request and determines, within twenty working days, whether and how to comply with that request, and in that situation a requester dissatisfied with the agency's determination must administratively appeal it to the head of the

7

agency before filing suit." *Id.* (citing 5 U.S.C. § 552(a)(6)(A)). Under the doctrine of constructive exhaustion, however, a requester may seek immediate judicial review if an agency fails to respond to a request within twenty working days. *Id.* But "an administrative appeal is mandatory if the agency cures its failure to respond within the statutory period by responding to the FOIA request before suit is filed." *Oglesby*, 920 F.2d at 63.

The doctrine of actual exhaustion controls here. McKathan does not contest that the EOUSA responded to his request before he filed this action. *Compare* EOUSA Ltr. at 1 (April 6, 2022), *with* Compl. at 1 (June 27, 2022). The EOUSA thus cured any timeliness issues.

Even so, McKathan argues that he is entitled to judicial review because the EOUSA never made a "determination" that would trigger his duty to exhaust. Pl.'s Cross-Mot. & Opp'n at 14. But this argument fails because in its May 12, 2022 response, the EOUSA made two determinations: (1) to comply with McKathan's request for records and (2) to deny his fee-waiver request. The EOUSA indicated that it intended to comply with McKathan's request for records when it informed him that it had found more than 3,000 possibly responsive documents. EOUSA Resp. at 1. The agency also denied his fee waiver request when it determined that, pursuant to regulations, fulfilling the records request would require a fee of $456 or a narrower request. *Id.* at 1–2; *see* 28 C.F.R. § 16.10(i). These determinations triggered a duty to exhaust.

McKathan neither paid the fee nor narrowed his request. Defs.' Mot. at 8; *see* McKathan Ltr. to EOUSA at 1. Nor did he appeal the assessment of fees or the denial of his fee-waiver request. Defs.' Mot. at 8. Such "failure to comply with an agency's FOIA regulations is the equivalent of a failure to exhaust." *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006), *aff'd*, No. 06-cv-5281, 2007 WL 1723362 (D.C. Cir. Mar. 6, 2007).

McKathan further suggests that constructive exhaustion applies here because the EOUSA failed to include in its letter information about his right to appeal. *See* Pl.'s Cross-Mot. & Opp'n at 14. But the statute requires notice of the right to administrative appeal as to *adverse* determinations of *records* requests. *See* 5 U.S.C § 552(a)(6)(A)(i)(III)(aa) ("Each agency, upon any request for *records*" shall determine "after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request[—] . . . in the case of an *adverse* determination—[of] the right of such person to appeal." (emphases added)). The EOUSA's denial of the fee-waiver request was adverse, but it was not an adverse determination of a request for records. And although the EOUSA impliedly denied the waiver by requesting McKathan pay a $456 fee, the EOUSA explicitly stated its determination to comply with the request for records. EOUSA Resp. at 1. Without an adverse determination with respect to the records request, the lack of information in the EOUSA letter about the right to appeal does not trigger constructive exhaustion. McKathan was therefore required to exhaust his administrative remedies before seeking judicial review.

McKathan did not exhaust the EOUSA's administrative remedies before filing this suit. Accordingly, the Court will grant the defendants' motion for summary judgment as to EOUSA requests and deny McKathan's cross-motion for summary judgment as to the same.

### B.     Criminal Division Request

To secure summary judgment, the Criminal Division "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reps. Comm. for Freedom of Press (RCFP) v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (citation modified). The agency can make such a showing "by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search

9

performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (citation modified). The fact that a search did not produce responsive materials does not mean that the search was inadequate. *SafeCard*, 926 F.2d at 1201. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.*

As an initial matter, neither McKathan's cross-motion for summary judgment nor his opposition to the defendants' motion for summary judgment disputes the adequacy of the Criminal Division's search. Generally, to preserve a summary judgment argument, a party must assert it in its opening brief. *See Shapiro v. DOJ*, 239 F. Supp. 3d 100, 120 (D.D.C. 2017). And courts routinely disregard arguments contesting the adequacy of a search that are not raised in a FOIA plaintiff's opening brief. *See, e.g.*, *Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 24 n.5 (D.D.C. 2019).

But even considering the forfeited argument, it fails on the merits. The Criminal Division's search was "reasonably calculated to discover" the requested documents. *SafeCard*, 926 F.2d at 1202. The Criminal Division followed its standard procedure to process the FOIA requests. *See* Cole Decl. ¶¶ 19, 15–18. Once the Criminal Division's FOIA Unit learned that McKathan's conviction pertained to child pornography, it determined that the Obscenity Section was the office most likely to maintain responsive records. *Id.* ¶ 20. Consistent with McKathan's request for "[a]ny and all records of any kind," "located in any location" that mention his name, address, or phone number, Crim. Div. Req. at 1, the Obscenity Section searched its case-management system

for mentions of Denzil McKathan or McCathan, his address, or his phone number. Cole Decl. ¶¶ 21–22.

In these circumstances, the fact that the searches turned up no responsive records, *id.,* bears little on the adequacy of the search. As explained, the adequacy of the search is "judged by a standard of reasonableness and depends . . . upon the facts of each case." *Weisberg*, 745 F.2d at 1485. And here, considering that neither the Criminal Division nor the Obscenity Section were involved in McKathan's prosecution by the U.S. Attorney's Office for the Southern District of Alabama, *see* Cole Decl. ¶ 23, it is unsurprising that the search yielded no results.

Judged by a "standard of reasonableness," *Mobley v. CIA*, 924 F. Supp. 2d 24, 36 (D.D.C. 2013) (quoting *Weisberg*, 745 F.2d at 1485), the Criminal Division's search of its electronic case-management system for McKathan's name, address, and phone number constituted "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *RCFP*, 877 F.3d at 402. The Court will therefore grant the defendants' motion for summary judgment as to McKathan's Criminal Division requests and deny McKathan's cross-motion for summary judgment as to the same.

## CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment, Dkt. 49, is granted and the plaintiff's Cross-Motion for Summary Judgment, Dkt. 51, is denied. A separate order consistent with this decision accompanies this memorandum opinion.

*[signature]*
DABNEY L. FRIEDRICH
United States District Judge

September 30, 2025